ARCHIE ELLEDGE, GUARDIAN FOR RALPH MASON SNOW, v. ARCHIE PARRISH AND WIFE, JENNIE PARRISH, RALPH MASON SNOW AND MAUDE SNOW.

(Filed 2 June, 1944.)

**1. Descent and Distribution § 3: Wills § 34—**

"Bodily heirs," in the strict technical sense of *issue*, are not limited to the immediate issue, or children, of the first taker, but include the rest of his lineal descendants in indefinite succession.

**2. Estates § 5: Wills § 34—**

A devise to one and his "bodily heirs," if the testatrix intended to use the term in its strict technical sense, would violate the rule against perpetuities, or might create a fee tail, and in either case a fee simple would vest in the first taker.

**3. Wills § 31—**

The courts are not required to indulge the presumption of technical use of words against the testamentary intent, when such intent may be reasonably ascertained from a contextual construction of the will.

**4. Wills § 33c—**

By a devise of a life estate to trustees for the benefit of a son and "whatever remains after his death shall go to his bodily heirs and if they are under age, at the time of my son's death, a guardian shall be appointed for the minor heirs of my son," and providing further, "in case my son and his bodily heirs should die leaving part of my estate, then I will that my nephew and his wife receive whatever remains," the only child of such son receives an unqualified remainder in fee after the life estate of his father, which vests in the only such child living at the death of testatrix for the benefit of himself and his class, subject to be defeated, in favor of the nephew and his wife, only upon the contingence of the death of such child before his father.

APPEAL by defendants Archie Parrish and wife, Jennie Parrish, from *Sink, J.,* at March Term, 1944, of FORSYTH.

Lizzie Sapp died 5 January, 1934, leaving a last will and testament in which, amongst other provisions, are the following pertinent to this controversy:

"Third: That none of my real estate be sold, except a two-acre plat of land on the North side of the Southern Railway, adjoining the lands of Kerners', Hester and the Cemetery, which may be sold by my Executors, if necessary, to be used for the purpose of a cemetery. The remainder of my real estate be held in trust, by my Executors for the benefit of my son, William V. Snow, during his lifetime, same to be sold only in case of necessity for his support. Whatever remains after his death, shall go to his bodily heirs and if they are under age, at the time of my son's death, a guardian shall be appointed for the minor heirs of my son, William V. Snow."

"Ninth: That in case my son, William V. Snow, and his bodily heirs should die, leaving part of my estate, then I will and desire that my nephew, Archie Parrish and his wife, Jennie Parrish, receive whatever remains."

William V. Snow died 2 September, 1936, survived by Ralph Mason Snow, his son and only issue, who was born 17 September, 1924, and still survives.

This proceeding is brought by Archie Elledge, Guardian of Ralph Mason Snow, under the foregoing will, to convert a portion of the lands described in the will into funds for the support of his ward.

In his petition the guardian alleges that all of the personalty of the estate coming into his hands under the will has been exhausted; and alleges that, under a proper construction of the will, his ward now has a fee simple title to the land devised in trust for the benefit of his father, William V. Snow, and that the portion thereof described in the petition should now be sold for his maintenance and support.

The respondents, resisting the proceeding, contended that Ralph Mason Snow has only a life estate in the properties, with remainder to them in fee; and denied the right of the petitioner to have any of the property sold for the benefit of his ward.

Upon the hearing of the matter, Judge Sink construed the will as conferring upon Ralph Mason Snow an estate in fee in all of the real estate that had been put in trust for his father, William V. Snow, and ordered the lots described in the petition to be sold as prayed for by the guardian. The defendants Parrish appealed.

*Ingle, Rucker & Ingle for defendants, Archie Parrish and wife, Jennie Parrish, appellants.*

*Ratcliff, Vaughn, Hudson & Ferrell for plaintiff, appellee.*

SEAWELL, J.   Notwithstanding the more rigorous position taken in the answer to the petition, counsel for appellants in their brief here seem to concede that, if necessary, the real estate in controversy might be sold under the provisions of the will for the maintenance and support of petitioner's ward, Ralph Mason Snow.   In this view, the appellants would be interested only in preserving to themselves what might be left of the estate after reasonable satisfaction of the burdens placed upon it by the will for the necessary support of Ralph Mason Snow during a life tenancy.   Since no question has been raised as to the reasonableness or necessity of the sale for the purpose indicated, we come near to having an academic question laid on the table in the closing phase of the controversy—since decision need not necessarily rest on a determination of the nature of the estate conferred on Ralph Mason Snow by the will.   However, the controversy resolved itself into a difference between the parties in the construction of the will.   The judgment was rendered upon the theory that Ralph Mason Snow had a fee simple title to the realty in controversy, and declares that appellants have no interest therein.   To avoid the probability of further litigation and appeal, we feel that it would not be amiss to settle this basic question upon the present appeal.

The solution to the problem presented on appeal depends upon the significance which must be attached to the term "bodily heirs" as used in paragraphs 3 and 9 of the will.

Certainly, if we can conceive the testatrix as using the expression "bodily heirs" in the strict technical sense of issue, the devise would not be limited to the immediate issue, or children, of William V. Snow, the first taker, but would include the rest of his lineal descendants in indefinite succession.   Albright v. Albright, 172 N. C., 351, 90 S. E., 303.   In that case, the appellants would take, if at all, upon the contingency of an indefinite failure of issue of William V. Snow; and since that event would not necessarily happen within the limits of the rule against perpetuity—life or lives of persons in being and twenty-one years and some months thereafter—the executive limitation over to appellants would be void; or if, by construing these terms technically, we could come to the conclusion that the effect of the limitation to the bodily heirs of William V. Snow is to create an estate in tail, the statute would convert this into an estate in fee in Ralph Mason Snow, the first taken in the line of the indefinite succession.   G. S., 41-1; Starnes v. Hill, 112 N. C., 1, 16 S. E., 1011; Hodges v. Lipscomb, 128 N. C., 57, 63, 38 S. E., 281; Revis v. Murphy, 172 N. C., 579, 90 S. E., 573; Keziah v. Medlin, 173 N. C., 237, 91 S. E., 836.

It is to be doubted whether under the facts of this case the Court would be justified in delving deeply into the learning respecting perpe-

tuities, entails, or the policy of the laws which have been devised in the
interest of the early vesting of estates and freer alienation.

In our opinion, the testatrix did not intend a disposition of her prop-
erty which would violate the rule against perpetuities or entail the estate
—not because of a conscious restraint from these prohibited practices,
but because her care was for the more immediate objects of her bounty.
There are certain expressions in both the 3rd and 9th paragraphs of the
will which can hardly be reconciled with the theory that testatrix in-
tended to exert a posthumous control over the succession for an indefinite
period.

In the 3rd paragraph she provides: "Whatever remains after his
death shall go to his bodily heirs and *if they are under age, at the time
of my son's death,* a guardian shall be appointed for the minor heirs of
my son, William V. Snow." The 9th paragraph is as follows: *"That in
case my son, William V. Snow, and his bodily heirs should die,* leaving
part of my estate, then I will and desire that my nephew, Archie Par-
rish and his wife, Jennie Parrish, receive whatever remains." It will
be observed that she first refers to bodily heirs—that is, the class of
bodily heirs of which she is thinking—as possibly being under age *at the
death of her son,* and provides that a guardian be appointed for them;
and again she refers to the death of her son, William V. Snow, and his
bodily heirs, certainly not with any conception that this might occur
generations apart, or at a remote time, but in such time that, if surviv-
ing them, appellants might receive whatever remains. Clearly she did
not have in mind a lineal descent which might sweep down through
succeeding generations.

The alternative to this view is that she used the term "bodily heirs"
in a nontechnical sense, as meaning the children of William V. Snow,
rather than in the strictly technical sense, which would mean his lineal
issue.

Often, where a devise is found to create an estate in tail or to offend
the rule against perpetuities, it will be discovered that such disposition
of the property was really the intent of the donor; but where that result
must be reached solely by assuming that the testator used the critical
words in their strict technical significance, we are not required to indulge
the presumption of technical use against the testamentary intent, when
it may be reasonably ascertained from a contextual construction. *Daniel
v. Bass,* 193 N. C., 294, 136 S. E., 733; *Albright v. Albright, supra,* and
cases cited. In this case we are satisfied that the testatrix used the term
"bodily heirs" as *descriptio personarum*—meaning the children of her
son, William V. Snow—rather than as a technical term qualifying the
estate and setting up an indefinite succession. *Starnes v. Hill, supra.*

We come, then, to consider the nature of the estate conferred upon Ralph Mason Snow. In item third of the will, the testatrix devised to the children of William V. Snow an unqualified remainder in fee after the life estate of the father, which vested in the only such child living at the death of the testatrix for the benefit of himself and his class. To give this devise the character of a life estate, we should have to refer to the limitation over to the Parrishes in paragraph 9—and to deduce, *ipso facto,* that the testatrix intended it to take place upon the death of Ralph Mason Snow in any event. However, the appellants do not take absolutely, but upon a contingency. That contingency is expressed in paragraph 9 as follows: "That in case my son, William V. Snow, and his bodily heirs should die, leaving part of my estate, then I will and desire that my nephew, Archie Parrish and his wife, Jennie Parrish, receive whatever remains." That both William V. Snow and his son, Ralph Mason Snow, should die in the course of human events was certain, and did not need to be expressed as a contingency; that they should die at the same time was highly improbable. What, then, is the significance of the contingency as thus expressed? Is the order in which they might die of significance? We think that it was the intention of the testatrix, although imperfectly expressed, that appellants should take only upon the death of William V. Snow without living issue. Moreover, her son, William V. Snow, and her grandson, Ralph Mason Snow, seemed to be the primary care of the testatrix, and no reason is apparent why she should cut the succession, in the interest of a collateral family branch, and deprive the grandson of the privilege of transmitting the inheritance. We are, therefore, of the opinion that Ralph Mason Snow, under sections 3 and 9, took a defeasible estate in fee, to be defeated only upon the contingency of his death before his father; upon this contingency, the appellants would be entitled to succeed under paragraph 9. That contingency did not happen; on the contrary, Ralph Mason Snow survived his father and his estate was thereby confirmed as an absolute estate in fee.

The conclusion reached in the court below was correct. The judgment is

Affirmed.