THOMAS L. KALE v. FRANCES KALE FORREST AND RICHARD B.
KALE, SR., INDIVIDUALLY AND AS EXECUTORS OF THE LAST WILL AND
TESTAMENT OF RUSSELL H. KALE, SR., RUSSELL H. KALE, JR.,
TRUDY LEE KALE, THERESA LYNN KALE, TINA LOUISE
KALE, TRACEY KALE, TAREN LEIGH KALE, RICHARD B.
KALE, JR., MARJORIE SYM KALE AND JOSEPH TURNER
FORREST, JR., AND JOHN H. VERNON, GUARDIAN AD LITEM

No. 58

(Filed 29 January 1971)

1. **Wills § 28— construction — intent of testator**

 The intent of the testator is his will, and such intent as gathered
 from its four corners must be given effect unless it is contrary to
 some rule of law or is in conflict with public policy.

2. **Wills § 28— intent of testator**

 The intent of the testator is ascertained, if possible, from testator's
 language and in light of conditions and circumstances existing at the
 time the will was made.

3. **Wills § 28— construction — technical words**

 Technical words in a will are presumed to have been used in
 their technical sense unless the other language of the will evidences
 a contrary intent; however, when testator obviously does not intend
 to use words in their technical sense, they will be given their ordinary
 and popular meaning.

4. **Wills § 28— intent of testator — control over particular words,
 phrases, sentences**

 The use of particular words, clauses or sentences must yield to
 the purpose and intent of the testator as found in the whole will.

**5. Wills § 58— failure of Court of Appeals to classify legacy**

Failure of the Court of Appeals to classify a legacy as general, specific or demonstrative is of no importance where the facts do not present questions of ademption, abatement or accretion, and the only question presented is the source from which the legacy is to be satisfied.

**6. Wills §§ 58, 73— educational bequest for granddaughters — payment from son's share**

Language of entire will shows that it was the intent of the testator that a $25,000 educational bequest for five of testator's grand-daughters should be taken from the one-fourth share of their father in testator's estate.

**7. Wills § 35— trust income to be paid son at age 60 — vested remainder**

Provision of a will stating that the share of testator's son "shall be put in trust for him and he shall get interest from this when he reaches 60 years of age," when considered with the language of the entire will and the circumstances existing when the will was executed, *held* to give the son a vested remainder in all accumulated income from his trust so that if he died before reaching age 60 such accumulated income would be paid to his estate.

**8. Wills § 43— ordinary meaning of "heir"**

The natural and ordinary meaning of the word "heir" is one who inherits or is entitled to succeed to the possession of property after the death of the owner.

**9. Wills § 28— meaning imputed to every word**

Every word of a will must have a meaning imputed to it if it is capable of a meaning without violation of the general intent or of any other provision of the will with which it may appear inconsistent.

**10. Wills § 43— life estate — remainder to testator's "surviving heirs" — determination at death of life beneficiary**

Where a will provided that the share of testator's son should be put in trust for him, that he should get the interest thereon when he reaches 60 years of age, and that "At his death the balance shall be given to my surviving heirs," the "surviving heirs" of testator who will take the balance of the trust fund should be determined at the death of the life beneficiary, not at the death of testator.

Justice MOORE did not participate in the consideration or decision of this case.

ON *certiorari* to review decision of the Court of Appeals (9 N.C. App. 82, 275 S.E. 2d 752), affirming judgment of *Gambill, J.*, February 1970 Session of ALAMANCE Superior Court.

This is a civil action instituted pursuant to G. S. 1-253 *et seq.*, seeking construction and interpretation of the will of Russell Henderson Kale, Sr.

---

---

Russell Henderson Kale, Sr., died testate a resident of Alamance County, on 7 February 1969, seized and possessed of real and personal property. His last will and testament, written in his own handwriting, provides as follows:

Mebane, N. C.
August 10, 1965

This is my Last Will and Testament

Item #1

After my taxes and all other expenses have been paid, my estate shall be divided as follows:

Richard B. Kale's ¼ part shall be given to Richard B. Kale, Jr. and Marjorie Sym Kale. They shall have Kale Knitting Mills stock at book value.

Frances Kale Forrest's interest shall divided equally between she and her son Joseph Turner Forrest, Jr.

Russell Henderson Kale's share shall be put in trust for him and he shall get interest from this when he reaches 60 years of age. At his death the balance shall be given to my surviving heirs.

Richard B. Kale, Sr. and Frances Kale Forrest are to act as Co-Executors without fee.

I hereby revoke all wills and codicils heretofore made by me.

$25,000.00 shall be taken from my estate for the college education of daughters of Thomas Kale, Trudy Lee Kale, Teresa Lyn Kale, Tina Louise Kale, Tracey Kale and Taren Leigh Kale. Any moneys not used for their education shall be held and earnings given to Thomas L. Kale.

Thomas L. Kale's share shall be put in trust for him and income from this trust shall be given him at age 60. If he is solvent at that time he can draw $1,000.00 yearly on principal.

s/ Russell H. Kale, Sr.

Witness: Manley L. Warren
Witness: Shirley J. Carver

The case was tried before Judge Robert M. Gambill, without a jury, at the February 1970 Civil Session of Alamance

County, at which time the court entered findings of fact, conclusions of law and judgement. We will hereafter quote portions of the facts found, conclusions of law and judgment as we consider the questions presented by this appeal.

Upon entry of judgement, petitioner Thomas L. Kale and respondent Frances Kale Forrest each appealed to the North Carolina Court of Appeals. The Court of Appeals affirmed the judgment entered by the trial judge. Petitioner Thomas L. Kale petitioned for writ of *certiorari* to North Carolina Court of Appeals to review its decision pursuant to G. S. 7A-31(c). The petition was allowed by order dated 5 October 1970.

*Ross, Wood & Dodge, by Harold T. Dodge, for Plaintiff-Appellant.*

*Hofler, Mount & White, by Lillard H. Mount and Richard M. Hutson II, for Defendant-Appellee Frances Kale Forrest.*

*Aycock, LaRoque, Allen, Cheek & Hines by C. B. Aycock for Defendant-Appellee Russell H. Kale, Jr.*

BRANCH, Justice

We first consider plaintiff appellant's contention that the trial court erred in determining that the $25,000 used to fund the educational bequest for testator's granddaughters shall be taken from the one-fourth share of Thomas L. Kale in the estate of Russell Henderson Kale, Sr.

This question involves specifically that portion of testator's will which states: ". . . $25,000.00 shall be taken from my estate for the college education of daughters of Thomas Kale, Trudy Lee Kale, Teresa Lyn Kale, Tina Louise Kale, Tracey Kale and Taren Leigh Kale. Any moneys not used for their education shall be held and earnings given to Thomas L. Kale."

We quote the trial judge's Findings of Fact, Conclusions of Law, and the portion of the judgment pertinent to this question:

CONCLUSIONS OF LAW . . . ISSUE V.

"1. The intent of the testator was to establish a $25,000.00 educational bequest for his granddaughters, the children of Thomas L. Kale.

2. The testator had already disposed of ¾th of his estate, prior to the $25,000.00 educational bequest.

3. The testator bequeathed any remainder in the education trust to Thomas L. Kale under the terms of the trust created for his benefit.

4. The testator allowed Thomas L. Kale to draw $1,000.00 annually from his trust after age 60.

5. It was the intent of the testator, Russell H. Kale, Sr., that the $25,000.00 used to fund the educational bequest of the children of Thomas L. Kale be taken from the ¼th share of Thomas L. Kale in the estate of Russell H. Kale, Sr."

" . . . It Is Ordered, Adjudged and Decreed as Follows:

. . . .

### Issue V

"The $25,000.00 used to fund the education bequest for Trudy Lee Kale, Theresa Lyn Kale, Tina Louise Kale, Tracey Kale, and Taren Leigh Kale, shall be taken from the ¼ share of Thomas L. Kale in the Estate of Russell H. Kale, Sr."

Appellant contends that the words "shall be taken from my estate" clearly created a general legacy chargeable upon the testator's personal estate. He argues that this language is so plain and obvious that the words must be taken to mean exactly what they say and that there is therefore no necessity for judicial construction. *Elmore v. Austin*, 232 N.C. 13, 59 S.E. 2d 205. However, an examination of this item of the will reveals that the language does not clearly express testator's intent and purpose as to whether the $25,000.00 educational bequest should be taken from the share of plaintiff Thomas L. Kale or from the general funds of the estate. We must therefore ascertain the intent of the testator when he made the will. *Trust Co. v. Wolfe*, 243 N.C. 469, 91 S.E. 2d 246.

[1] The intent of the testator is his will, and such intent as gathered from its four corners must be given effect unless it is contrary to some rule of law or is in conflict with public policy. *McCain v. Womble*, 265 N.C. 640, 144 S.E. 2d 857; In re Will of Wilson, 260 N.C. 482, 133 S.E. 2d 189; *Poindexter v. Trust Co.*, 258 N.C. 371, 128 S.E. 2d 867.

---

Kale v. Forrest

---

[2-4] The intent is ascertained, if possible, from the testator's language and in light of conditions and circumstances existing at the time the will was made. *Thomas v. Thomas,* 258 N.C. 590, 129 S.E. 2d 239. In considering the language used, technical words will be presumed to have been used in their technical sense unless the other language of the will evidences a contrary intent; however, when testator obviously does not intend to use words in their technical sense, they will be given their ordinary and popular meaning. *Elledge v. Parrish,* 224 N.C. 397, 30 S.E. 2d 314. In any event, the use of particular words, clauses or sentences must yield to the purpose and intent of the testator as found in the whole will. *Moore v. Langston,* 251 N.C. 439, 111 S.E. 2d 627; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17.

The bequest under consideration was made after testator had disposed of three "shares" or "parts" of his estate. Thomas L. Kale was the only remaining child, and the first share had been denominated a ¼ part. We think the language of the will shows a paramount intent to divide his estate into four equal parts or shares for the benefit of testator's four children or their representatives. There is nothing in the language of the will that indicates that the testator intended to shift the primary responsibility to educate his children from Thomas L. Kale to the other beneficiaries of the will. The provision that any moneys not used for educational purposes should be held and given to Thomas L. Kale runs counter to appellant's contention that the bequest should be satisfied from the general fund. In addition to putting a burden on all the beneficiaries to educate Thomas L. Kale's children, the testator would be destroying the equal division of the corpus of the shares of his estate by giving Thomas L. Kale the benefit of any unused moneys in the bequest. The provision in the will allowing Thomas L. Kale to invade the principal of the trust created for his benefit infers a recognition by the testator that Thomas L. Kale's share might be depleted by the educational bequest. Further, if we place ourselves in the position of the testator at the time he made his will, it is understandable that the unskilled writer of his "homemade" will would consider money taken from any one of the allotted shares of his estate to be synonymous with money taken "from my estate."

[5] Plaintiff complains of the failure of the Court of Appeals to classify the legacy as general, specific or demonstrative.

See *Shepard v. Bryan,* 195 N.C. 822, 143 S.E. 835, for a full discussion of the classification of legacies and for distinctions between general, demonstrative and specific legacies.

In the Lifetime Edition of *Page on Wills,* Volume 4, Sec. 1392, page 102, it is stated:

> "While it is generally assumed that the terms which are used to designate these different classes of legacies have the same meaning, without regard to the nature of the problem, in the solution of which the classification is employed, it is by no means certain that they are used in the same way in all of these cases. The courts determine the class under which a legacy is to be placed, by ascertaining the incidents which testator intended that such legacy should have, whether in case of abatement, due to a deficiency in assets, or in ademption, due to the destruction or sale of the subject-matter of the gift, or in other questions such as to the right to accretions; and if the court has ascertained the testator's intention in such instances, the court then places the legacy in the class to which such incidents attach it. The court does not begin by determining the class under which the legacy is to be placed; and then attaching to the legacy in question, the incidents which ultimately attach to a legacy of such class. The classification of legacies and devises is, therefore, practically a matter of convenience in expression. The rights of the parties could be determined just as well without the use of the names of these classes of legacies and devises; although it would frequently take more words to express the same idea. It is. quite likely, therefore, that a somewhat different meaning is given to these different names of classes, when used in connection with different problems.

> "If the result is likely to be the same, whichever class of a legacy or devise it may be, the terms are likely to be used rather loosely. If a question of abatement is involved, and the result would be the same whether the legacy were specific or demonstrative, a legacy which is really specific may be called demonstrative. Conversely if the question is one of the ademption by sale of the property, and the result would be the same whether the legacy were a general legacy or a demonstrative legacy, it may be called a demon-

strative legacy when it is really a general legacy. The term specific legacy is sometimes used to indicate a legacy to which precedence is given in abatement, rather than a legacy which is in its nature specific.

"Whether a given legacy is residuary, general, specific, or demonstrative depends upon the intention of the testator as shown by the entire will."

We do not attach importance to the failure of the Court of Appeals to classify this legacy since the facts of this case do not present questions of ademption, abatement or accretion. The only question presented is the source from which the fund is to be satisfied.

[6] We think that the language of the entire will shows that it was the intent of the testator that the educational bequest for his grandchildren be taken from the share of their father, Thomas L. Kale, and that it was the intent of the testator to burden only the share of Thomas L. Kale with the payment of this bequest.

The Court of Appeals correctly found no error in the trial court's findings of fact, conclusions of law and judgment entered as to testator's educational bequest.

[7] Appellant contends that the trial judge erred in concluding as a matter of law that Russell Henderson Kale, Jr. had a vested remainder in all accumulated income from his trust so that if he died before reaching age 60 such accumulated income would be paid to his estate.

The specific provision of the will pertinent to this question is as follows: "Russell Henderson Kale's share shall be put in trust for him and he shall get interest from this when he reaches 60 years of age. At his death the balance shall be given to my surviving heirs."

The conclusions of law and portions of the judgment relating to this question are:

CONCLUSIONS OF LAW . . . ISSUE II.

"2. The testator, Russell H. Kale, Sr., intended to provide Russell Henderson Kale, Jr., a life estate in the corpus of his portion of the estate with the remainder to the testator's surviving heirs. The income produced from this portion is to be accumulated until Russell Henderson

Kale, Jr., reaches the age of 60, at which time he will be paid the accumulated income; and thereafter, he shall be paid the income on the corpus at quarterly intervals.

"3. In the event that the said Russell Henderson Kale, Jr., shall die prior to reaching the age of 60 years, all accumulated income shall be paid to his estate."

" . . . IT IS ORDERED, ADJUDGED AND DECREED AS FOL-LOWS:

. . . .

## ISSUE II.

"1. The ¼th interest devised to Russell Henderson Kale, Jr., shall be held in trust for him for life. The income produced from this portion is to be accumulated until Russell Henderson Kale, Jr., reaches the age of sixty (60), at which time he will be paid the accumulated income, and thereafter he shall be paid income on the corpus at quarterly intervals.

"2. In the event the said Russell H. Kale, Jr., shall die prior to reaching the age of sixty (60) all accumulated income shall be paid to his estate."

In the case of *Trust Company v. Grubb*, 233 N.C. 22, 62 S.E. 2d 719, the testator devised the residue of his estate in trust, providing that the "entire net income be paid monthly or quarterly, after expiration of three years from the date of my death" to named beneficiaries. This Court, in construing this portion of the will, stated:

" 'Where a trust is created by will and by the terms of the trust the income is payable to a beneficiary for a designated period, the beneficiary is entitled to income from the date of the death of the testator, unless it is otherwise provided in the will. The rule here stated is applicable to trusts created by a specific devise or legacy, by a general pecuniary legacy, and by a residuary devise or bequest; and it is immaterial whether the same person is designated as executor and trustee.' Restatement of the Law of Trusts, Sec. 234, p. 692; *Cannon v. Cannon*, 225 N.C. 611, 36 S.E. 2d 17; 54 A. J. 92; Anno. 70 A.L.R. 636, 105 A.L.R. 1194, and 158 C.L.R. 441.

"Under this rule those to whom the income is to be paid are entitled to the income from the date of the death of testator unless it is otherwise provided in the will.

"The appellants concede that the general rule, as above quoted, prevails in this jurisdiction, *Cannon v. Cannon, supra,* and that nothing else appearing, all the income must be disbursed as directed in the will. But they stressfully contend that it is 'otherwise provided in the will'; that the language 'after the expiration of three years from the date of' testator's death fixes the time the income shall begin to accrue to the use of the beneficiaries, as well as the time the payments to them are to begin. . . .

. . . .

"The language 'after the expiration of three years from the date of my death' designates the time payments to the beneficiaries shall begin and merely postpones the enjoyment of the gift."

In the case of *Robinson v. Robinson,* 227 N.C. 155, 41 S.E. 2d 282, the testator's will, in part, provided:

"Fifth. I will and bequeath to my Executors hereinafter named to be held in trust for my grandchildren, all my lands in Camden County, N. C., and all my lands in Baltimore County, Md., together with any money on deposit with the C. H. Robinson Co. as shown on the books of said Company in an account under the heading of 'C. H. Robinson Trust Account.' My Executors are hereby empowered to sell any part of said lands, and to use the proceeds of such sales for the improvement of the balance of the lands unsold, or to place the proceeds of such sales in Trust in some Bank or Trust Company to be held as a Trust fund for the benefit of my Grand Children, at the discretion of said Executors. When the youngest of my Grand Children shall reach the age of Twenty one years, an equal division of this Trust shall be made in value of any lands unsold and of money on deposit held in trust for my Grand Children, and conveyed to my Grand Children by my Executors, share and share alike in value."

One of the grandchildren, Charles Robinson Hanes, died before the youngest grandchild reached majority and left a widow surviving who was the sole beneficiary of his will. After

the youngest grandchild became twenty-one years old, the trustee sought advice of the court as to whether the widow of Charles R. Hanes should share equally with the other grandchildren. The court, holding that Charles R. Hanes became vested with his interest in the trust property prior to his death, and that his widow was entitled to receive his interest, stated:

". . . 'It is generally held, nothing else appearing in the will to the contrary, where an estate is devised to a trustee in an active trust for the sole benefit of persons named as beneficiaries with directions to divide up and deliver the estate at a stated time, this will have the effect of vesting the estate immediately upon the death of the testator. The intervention of the estate of the trustee will not have the effect of postponing the gift itself, but only the enjoyment . . . The rule is, we think, applicable to an estate in trust of mixed personalty and realty.

"Moreover, the primary purpose in interpreting all wills is to ascertain what the testator desired to be done with his estate."

We find in *Elmore v. Austin*, 232 N.C. 13, 59 S.E. 2d 205, the following statement: "The law favors the construction of a will which gives to the devisee a vested interest at the earliest possible moment that the testator's language will permit," and in *Parker v. Parker*, 252 N.C. 399, 113 S.E. 2d 899, it is stated: "An estate is vested when there is either an immediate right of present enjoyment or a *present fixed right of future enjoyment*." (Emphasis supplied.) See also *Patrick v. Beatty*, 202 N.C. 454, 163 S.E. 572; *Pridgen v. Tyson*, 234 N.C. 199, 66 S.E. 2d 682; *Johnson v. Baker*, 7 N.C. 318; *Priddy & Co. v. Sanderford*, 221 N.C. 422, 20 S.E. 2d 341.

Appellant, in support of his contention, cites and relies upon the case of *Giles v. Frank*, 17 N.C. 521, which held the following provision passed a contingent interest: "I give to Edward S. Giles one horse, saddle and bridle, worth $80, 'when he shall arrive at age of twenty-one years.' "

*Giles v. Frank, supra*, is distinguishable from instant case in that there, the only part of the will before the court was the above quoted sentence, which expressly and unmistakably made the gift effective when beneficiary reached the age of twenty-one. In instant case the language, standing alone, seems to im-

mediately place the fund in trustee's hands upon death of testator. Further, the whole will is before the court and lends itself to an interpretation of immediate vesting.

Appellant also relies upon that portion of *Carter v. Kempton,* 233 N.C. 1, 62 S.E. 2d 713, which states:

> ". . . (I)f there is no gift of the estate, or the income therefrom, or other interest therein, distinct from the provision for its division, which is to be made equally between all the children and, for the first time, upon the termination of the trust, the 'when' of the division is of the essense of the donation and is a condition precedent that marks the time of vesting as well as the time of the full enjoyment of the gift."

Instant case does not come within the rule stated in *Carter v. Kempton, supra,* which is relied upon by appellant. In the case before us there was an immediate gift conveyance to the trustee and there was a provision for distribution prior to the termination of the trust. Thus, the "when" in instant case is not a condition precedent marking the time of vesting.

[7] We think that the words "Russell Henderson Kale's share shall be put in trust for him and he shall get the interest from this when he reaches 60 years of age," when considered with the language of the entire will and the circumstances existing when the will was executed, manifests an intent on the part of the testator that the "share" should immediately vest in the trustee for the benefit of Russell Henderson Kale, Jr., during his lifetime and that benefit of the full enjoyment of the "share" was only postponed until he reached the age of sixty. Upon testator's death Russell Henderson Kale, Jr., had a present fixed right of enjoyment in all properties constituting his trust estate, and it is so vested that in event of his death before age sixty any accumulated income from his trust estate shall be paid to the representative of his estate.

[10] Finally, we must determine whether the trial judge erred in concluding that the surviving heirs of Russell Henderson Kale, Sr., should be determined as if testator "had died immediately following the death of Russell Henderson Kale, Jr." We quote the portion of the will relevant to this question: "Russell Henderson Kale's share shall be put in trust for him and he shall get interest from this when he reaches 60 years of age. *At his death*

Kale v. Forrest

*the balance shall be given to my surviving heirs."* (Emphasis ours.)

The portion of the judgment and the conclusions of law pertinent to this question are:

CONCLUSIONS OF LAW . . . ISSUE II.

"4. The surviving heirs of Russell H. Kale, Sr., are to be determined at the death of the life tenant, Russell Henderson Kale, Jr., as if Russell H. Kale, Sr., had died immediately after the death of Russell Henderson Kale, Jr. All heirs of Russell H. Kale, Sr., so determined will inherit the corpus."

". . . IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

. . . .

ISSUE II.

. . . .

"3. Upon the death of Russell Henderson Kale, Jr., the corpus shall be paid to the surviving heirs of Russell H. Kale, Sr. The heirs of Russell H. Kale, Sr., shall be determined at the death of Russell Henderson Kale, Jr., as if Russell H. Kale, Sr., had died immediately following the death of Russell Henderson Kale, Jr. All the heirs of Russell H. Kale, Sr., so determined, will inherit the corpus."

In *Trust Company v. Bass,* 265 N.C. 218, 143 S.E. 2d 689, it is stated:

"The rule is succinctly stated in *Yarn Co. v. Dewstoe,* 192 N.C. 121, 124, 133 S.E. 407, 409:

'As a general rule where a devise is made to one for life and after his death to the testator's next of kin, the next of kin who are to take are the persons who answer that description at the death of the testator and not those who answer the description at the death of the first taker. (Citations omitted.) It is otherwise, however, where it appears from the terms of the will that some intervening time is indicated.' Accord, *Pridgen v. Tyson,* 234 N.C. 199, 66 S.E. 2d 682; *Privott v. Graham,* 214 N.C. 199, 198 S.E. 635; *Trust Co. v. Lindsay,* 210 N.C. 652, 188 S.E. 94; *Baugham v. Trust Co.,* 181 N.C. 406; 107 S.E. 431; *Jenkins v. Lambeth,* 172 N.C. 466, 90 S.E. 513; *Rives v. Frizzle,* 43 N.C. 237; *Jones v. Oliver, supra* (38 N.C. 369)."

This general rule is bottomed on the reasoning that the law favors early vesting of estates and that it generally operates so as to give the words of description their ordinary and natural meaning; however, the rule is one of construction used in ascertaining the testator's intent, and must give way when an examination of the entire will discloses a different meaning. *Jenkins v. Lambeth,* 172 N.C. 466, 90 S.E. 513; *Trust Co. v. Bass, supra.*

In instant case other portions of the will shed little light upon our search for testator's intent as to whether the surviving heirs of testator are determined at the death of testator or upon the death of Russell H. Kale, Jr. Our interpretation must therefore focus on the words "At his death the balance shall be given to my surviving heirs."

We again try to place ourselves in the position of the testator, a writer untrained in the law, and determine his intent from the language used in the will.

[8] Webster's New International Dictionary defines the word "heir" as one who inherits or is entitled to succeed to the possession of property after the death of the owner. This is, we think, the natural and ordinary meaning of the word. This Court has held that "An heir is a person on whom the law casts an estate upon the death of the owner of the property, and therefore a living person, strictly speaking, can have no heir." Strong, N. C. Index, 2d Ed., Vol. 7, Wills, Sec. 43, p. 646; *Whitley v. Arenson,* 219 N.C. 121, 12 S.E. 2d 906. Thus, when we consider the word "heir" either in its ordinary and common meaning or as construed by the court, it must have been apparent to testator that any of his heirs must of necessity survive him.

[9] It is a recognized rule of construction that every word of a will must have a meaning imputed to it, if it is capable of a meaning, without violation of the general intent or of any other provision in the will with which it may appear inconsistent. *Lee v. Baird,* 132 N.C. 755, 44 S.E. 605. Thus, in ascertaining testator's intent we must give some meaning to the word "surviving."

Webster's New International Dictionary defines "surviving": "remaining alive or in existence."

We are unable to find a North Carolina case containing an interpretation of the exact language here used. We do find cases which we deem helpful in interpreting the testator's intent.

Kale v. Forrest

In the case of *Freeman v. Freeman,* 141 N.C. 97, 53 S.E. 620, the testator gave to his wife sole use of all his property for her life, and provided: "That the real and personal property, at the death of my wife, Elizabeth Freeman, shall be sold to the highest bidder, (graveyard excepted) and the proceeds equally divided between all my children that appears personally and claims their part, and this will shall disinherit all of said children that applies through an agent." The Court, holding that only children of the testator who were living at the death of his widow were entitled to share in the estate, stated:

" . . . [T]he court inclines to that construction which will make the title to property left in remainder vested, rather than contingent. . . . This rule is not permitted, however, to interfere with the primary rule of construction which requires the court, in all cases, to ascertain and effectuate the intention of the testator, as gathered from the language used, if possible. The court will ascertain such intention by giving to non-technical words their ordinary and popular meaning, assuming that the testator used them in that sense in which they are generally used and understood."

We find the following in the case of *Mercer v. Downs,* 191 N.C. 203, 131 S.E. 575:

". . . Indeed the prevailing rule seems to be that if an estate is given by will to the survivors of a class to take effect on the death of the testator, the word 'survivors' means those living at the death of the testator; but if a particular estate is given and the remainder is given to the then survivors of a class, the word 'survivors' means those surviving at the termination of the particular estate. . . . It necessarily follows, therefore, that the remaindermen could not be ascertained with certainty until the termination of the life estate."

This Court has held that a devise for life and at death of life tenant to children "then living" conveys a contingent remainder to the children, which would determine the class at the death of the life tenant, *Woody v. Cates,* 213 N.C. 792, 197 S.E. 561, and that where a will provides that a remainder shall go to persons alive at the termination of a trust or a life estate, that the remainder is contingent, and the persons who take are de-

termined at the termination of the trust or at the time of the death of the holder of the life estate. *Trust Co. v. Schneider,* 235 N.C. 446, 70 S.E. 2d 578; *Trust Co. v. Henderson,* 225 N.C. 567, 35 S.E. 2d 694; *Knox v. Knox,* 208 N.C. 141, 179 S.E. 610.

The case of *Witty v. Witty,* 184 N.C. 375, 114 S.E. 482, in part states:

"... Thus it has been held that contingent and not vested remainders were created where the testator, in making an ulterior disposition of property after a particular life estate, uses such expressions as 'to such of my sons as may be living at their mother's death,' or 'surviving at her death,' or 'to the representatives of such as may have died before her death,' showing clearly that not only the enjoyment of the remainder, but also the right to take it was intended to be postponed until after the expiration of the preceding life estate. *Whitesides v. Cooper,* 115 N.C. 570; *Bowen v. Hackney,* 136 N.C. 187; *Freeman v. Freeman,* 141 N.C. 97; *James v. Hooker,* 172 N.C. 780; *Jenkins v. Lambeth,* 172 N.C. 466; *Thompson v. Humphrey,* 179 N.C. 44; *In re Kenyan,* 17 R.I. 149."

In the case of *Johnston v. Herrin,* 383 Ill. 598, 50 N.E. 2d 720, testator devised his estate to his wife in trust so as to give her full use and power of disposition of all the property in the trust, and at her death provided that the remainder should be "equally divided among my surviving descendants" in the same manner as provided by intestate laws of the State of Illinois. The court held that the class was to be determined at the death of the life tenant, and stated:

"... The word 'surviving' is a part of the description of those who are to take. This marks a distinction between this case and those cited by appellants. 'Surviving' is a word of survivorship which describes the gift and the donees and precludes the vesting of the gift until it can be determined who such donees are."

See Annotations 114 A.L.R. 4; 20 A.L.R. 2d 830.

[10] Here, the language of the will clearly refers to the death of the first taker as the time when the fund will be distributed. This is the time when the persons who finally take will be definitely and finally determined. We think it is clear that when the testator used the words "my surviving heirs" he was speaking

of persons who would be living or surviving at the death of Russell Henderson Kale, Jr. We hold that the heirs of Russell Henderson Kale, Sr., who will take the balance of the trust fund devised to Russell Henderson Kale, Jr., will be the heirs surviving at the death of Russell Henderson Kale, Jr.

The decision of the Court of Appeals is

Affirmed.

Justice MOORE did not participate in the consideration or decision of this case.