FIRST-CITIZENS BANK & TRUST COMPANY as EXECUTOR AND TRUSTEE UNDER THE WILL OF HARVEY. L. BARNES v. WILLIAM R. BARNES, WILLIAM M. BARNES, SCOTT T. BARNES, BARBARA BARNES SHERMAN, HARVEY LEE BARNES III, PATRICIA A. BARNES, HELEN BARNES ALLGEIER; ANGELA MARIE BARNES, INFANT CHILD OF HARVEY LEE BARNES III; THE UNBORN ISSUE OF WILLIAM M. BARNES, SCOTT T. BARNES AND HARVEY LEE BARNES III; AND THE UNBORN ISSUE OF BARBARA BARNES SHERMAN, PATRICIA A. BARNES AND HELEN BARNES ALLGEIER

No. 743SC815

(Filed 2 January 1975)

1. Trusts § 10— death of beneficiary — distribution of corpus — unequal shares to grandsons and granddaughters

In an action to determine distribution of trust corpus and accumulated income upon the death of one of testator's grandchildren without lineal descendants, the trial court erred in determining that the deceased grandchild's portion of the trust should be distributed to the trusts for each remaining grandchild in equal shares where testator's will clearly manifested his intent that trusts established for his grandsons and his granddaughters not be equal, neither with respect to total corpus for each trust nor with respect to the corpus set aside for each grandson as compared with that set aside for each granddaughter.

2. Trusts § 8— death of beneficiary — income distribution — equal shares to remaining beneficiaries

The trial court properly determined that accumulated undistributed trust income applicable to a grandchild of testator who died without lineal descendants should be divided equally among the six surviving grandchildren, though the corpus of the trust should not

be divided equally among grandsons and granddaughters and though testator used the term "jointly" in directing income distribution to the granddaughters, since in all other references to income distribution in the will testator demonstrated an intent that the income from the trust for the granddaughters, like the one for the grandsons, be distributed to the beneficiaries equally.

APPEAL by the Guardian Ad Litem for the unborn issue of Barbara Barnes Sherman, Patricia A. Barnes, and Helen Barnes Allgeier, from judgment entered by *Rouse, Judge,* in Chambers, Superior Court, CRAVEN County, 17 July 1974. Heard in the Court of Appeals 11 December 1974.

Harvey L. Barnes, a resident of Craven County, North Carolina, died on 26 April 1961, leaving a last will and testament which was duly probated and recorded in the office of the Clerk of the Superior Court of Craven County.

Item V of his will is as follows:

"The remainder of the capital stock of the Maola Milk and Ice Cream Company standing in my name at the time of my death after the sale of any stock as provided in Item III of this Will, I give and bequeath to the First-Citizens Bank and Trust Company as Trustee, upon the trusts and conditions hereinafter set out, to wit:

1. To apply the net income from thirty-eight and 52/100 (38.52%) percent of said stock in trust for the use and benefit of my wife, Kathleen R. Barnes, said net income to be paid to her in convenient installments but not less frequently than semiannually, during her lifetime, provided the income payable to my wife hereunder shall not in any event be less than the net income as shown by the Federal income tax return for said trust before the deduction of the income distributed to my said wife.

In addition to income, the Trustee shall distribute to or for the benefit of my said wife from time to time, such sums from the principal of the trust as it may consider necessary or desirable for her medical care, comfortable maintenance and welfare, taking into consideration the station of life to which she is accustomed at the time of my death, and all other income and cash resources available to her for such purposes from all sources known to the trustee.

In this connection, in order to carry out this direction, my trustee shall have the power to dispose of said stock with

the written consent of my wife, as hereinafter more fully set forth, to produce cash for her needs, maintenance and support, and said trustee shall upon the written request of my said wife sell said stock, or any portion thereof, as directed by her and apply the proceeds of such sale for her benefit or as she may direct to any other person.

2. To apply the net income from eight and 01/100 (8.01%) percent of said stock after any sale under Item III hereof, in trust for the use and benefit of my son Harvey L. Barnes, Jr.; to apply the net income from eight and 01/100 (8.01%) percent of said stock after any sale under Item III hereof in trust for the use and benefit of my son, William R. Barnes; to apply the net income from eight and 97/100 (8.97%) percent of said stock after any sale under Item III hereof, in trust for the use and benefit of my three grandsons, share and share alike; and to apply the net income from ten and 65/100 (10.65%) percent of said stock after any sale under Item III hereof, in trust for the use and benefit of my four granddaughters, jointly.

The said income is to be paid to the persons named in the proportions set out, or for their benefit, in equal shares as frequently as earnings or dividends on said stock shall be available for such purpose, this to continue so long as each beneficiary named in this paragraph shall live, subject to the power of the trustee herein set out as to disposal.

3. Upon the death of each of my said sons, the stock held for the benefit of the one so dying shall be held in trust for the benefit of my grandchildren designated in the next preceding paragraph, and shall become a part of the trust set out in the next preceding paragraph for said grandchildren, and held by my said trustee for the same purposes and benefits for my said grandchildren so long as they shall live, the distribution to my said grandchildren to be on a per capita basis as set forth in the proportions set forth in the next preceding paragraph.

4. I hereby grant to my said wife the power to appoint by her Last Will and Testament or by an earlier instrument in writing the entire remaining principal of the trust, or any part thereof, herein set up for her benefit, to her estate or to such persons as she shall designate, free of this trust, such power to be exercisable by her alone and only by specific reference thereto in her Last Will and Testament or

other written instrument referred to above. The amount in value of stock in said trust set up for the benefit of my said wife, together with so much of the property bequeathed and devised, to her under Item II of this Will as shall equal the amount of fifty (50%) percent of the adjusted gross estate as determined for Federal Estate tax purposes, shall constitute the marital deduction under the provisions of the Federal Estate Law.

5. If my wife should predecease me, my entire residuary estate shall be administered and disposed of in accordance with paragraphs 2 and 3 of Item V of this Will, hereby giving to my said trustee full power and authority to deal with any property which would pass by reason of this paragraph of my Will, including the real estate and personal property described in Item II, and my sons and my grandchildren shall participate in such other property in the same proportions and to the same extent as is set out for their participation in the capital stock of the Maola Milk and Ice Cream Company. Said trustee shall have the power and authority to sell, mortgage, pledge, invest and reinvest as in its discretion shall be to the best interest of the beneficiaries named in this Will, said trust to continue in like manner and to the same extent and for the benefit of the same persons as set out above.

6. If any grandchild mentioned in Item V of this Will should die without lineal descendants, his or her share shall go to the surviving grandchildren for their lives in the same proportions as set out in paragraph 2 of Item V.

7. Upon the death of each of my grandchildren leaving lineal descendants, the stock herein given and its accumulations shall go to such lineal descendants of each grandchild so dying in the proportions hereinbefore set out, free and discharged of the trust herein set out or any other restriction."

Harvey L. Barnes, Jr., a son of testator, predeceased him. William R. Barnes, another son, survived. The record is silent as to which of the grandchildren were in being at testator's death. Those in being at the time of the bringing of this action were William M. Barnes, Scott T. Barnes, and Harvey Lee Barnes, III, grandsons, and Barbara Barnes Sherman, Patricia A. Barnes, and Helen Barnes Allgeier, granddaughters. Eleanor R. Barnes, unmarried, was the only other grandchild of Harvey

L. Barnes, and she died intestate on 6 January 1972. Angela Marie Barnes is the daughter of Harvey Lee Barnes, III, a grandson of testator. The unborn lineal descendants of testator's grandsons are represented in this action by a guardian ad litem as are the unborn lineal descendants of testator's granddaughters.

Upon the death of Eleanor R. Barnes, granddaughter of testator, the trustee instituted this action asking for instructions with respect to distribution of shares upon the event of the death of a beneficiary within a specified group and asking for instructions with respect to vesting of interests and defining of interests of lineal descendants of grandchildren. The court concerned itself with only one of the questions, to wit: "How should Eleanor R. Barnes's share, who died without lineal descendant, be distributed in view of the language of Item V, paragraph 2, which states that the granddaughters' trust is held jointly, and the grandsons' trust is held 'share and share alike' and Item V, paragraph 6 which states that the interests of any grandchild who dies without lineal descendants shall go to the surviving grandchildren for their lives in the proportions set forth in paragraph 2?" After reviewing the matter the court found facts and concluded that a real controversy exists with respect to the proper distribution of the share of the deceased granddaughter, Eleanor R. Barnes. It further concluded:

"4. The original proportions set forth in the testator's Will reveals an intention of the testator that his grandsons receive a proportionate larger share of the available income than his granddaughters and further that the lineal descendants of the grandsons receive a higher proportionate share of the principal than the lineal descendants of the granddaughters.

5. When viewed in the context of this Will the language contained in Item V, paragraph 6 is interpreted to mean that each grandchild shall receive an equal amount as any other grandchild upon the death of a grandchild, without lineal descendants; and that the deceased grandchild's portion of that grandchild's trust shall be distributed to the trust for each remaining grandchild in equal shares.

6. To preserve the intention of the testator, the share of the principal within the granddaughters' trust applicable to the deceased granddaughter, Eleanor R. Barnes, shall be divided in equal amounts between the remaining grandchil-

dren of Harvey L. Barnes and placed in the trust for the applicable grandchildren, to wit: one-sixth of the applicable net corpus shall be placed in the trust for each grandchild of the said Harvey L. Barnes and added to the amount now held for each grandchild with prospective income on this additional proportion of the corpus being distributed to each grandchild in the same manner as the original; and, the accumulated undistributed income of the said Eleanor R. Barnes, deceased, shall likewise be divided in equal amounts between the remaining grandchildren of Harvey L. Barnes, to wit: one-sixth of the said income shall go to each grandchild and shall be of the same nature as that already being received by said grandchild."

Based upon those conclusions the court ordered that:

"1. The portion of the corpus of the granddaughter's trust applicable to Eleanor R. Barnes, shall be divided in equal amounts among the surviving grandchildren who number six and a one-sixth share of said corpus shall be allotted to the interest of each grandchild in the respective trust.

2. The accumulated undistributed trust income applicable to Eleanor R. Barnes, shall be divided in equal amounts among the surviving grandchildren who number six and each surviving grandchild shall take as its share, one-sixth of the amount previously allotted to said Eleanor R. Barnes."

The guardian ad litem for the unborn lineal descendants of the granddaughters of testator excepted to the entry of and appealed from the judgment.

*Ward & Ward, by Jerry F. Waddell, for Jerry F. Waddell, Guardian Ad Litem for the unborn lineal descendants of Barbara Barnes Sherman, Patricia A. Barnes, and Helen Barnes Allgeier, respondent appellant.*

*Ward, Tucker, Ward & Smith, P.A., for First-Citizens Bank & Trust Company as Executor and Trustee under the Will of Harvey L. Barnes, petitioner appellee.*

*Lee and Hancock, by Moses D. Lassiter, for Moses D. Lassiter, Guardian ad Litem for Angela Marie Barnes, respondent appellee.*

*Barden, Stith, McCotter & Stith, by F. Blackwell Stith, for F. Blackwell Stith, Guardian ad Litem for the unborn lineal descendants of each grandson, respondent appellee.*

MORRIS, Judge.

No question is raised by anyone involved in this litigation with respect to the procedure adopted. We assume that the action is brought under the provisions of G.S. 1-253.

Before we get into the merits of the appeal, we think it appropriate to note that we agree with the trial court that the only justiciable issue of the issues set out in the complaint is the one answered by the trial court.

The correct interpretation of the provisions of testator's will presently before us is far more difficult of determination.

General principles applicable in construing a will are set out by Justice Branch in *Kale v. Forrest,* 278 N.C. 1, 5, 6, 178 S.E. 2d 622 (1970) :

> "The intent of the testator is his will, and such intent as gathered from its four corners must be given effect unless it is contrary to some rule of law or is in conflict with public policy. (Citations omitted.)
>
> The intent is ascertained, if possible, from the testator's language and in light of conditions and circumstances existing at the time the will was made. (Citation omitted.) In considering the language used, technical words will be presumed to have been used in their technical sense unless the other language of the will evidences a contrary intent; however, when testator obviously does not intend to use words in their technical sense, they will be given their ordinary and popular meaning. (Citation omitted.) In any event, the use of particular words, clauses or sentences must yield to the purpose and intent of the testator as found in the whole will. (Citations omitted.)"

[1] There is one intention in the will before us which is not laden with ambiguity, and that is that the testator did not intend that the corpus of trusts bequeathed to the trustee for the benefit of his grandchildren be equal. He very clearly provided that the net income from *8.97%* of his stock in Maola should be held in trust for the use and benefit of his *three grandsons* and that the net income from *10.65%* of the stock should be held in trust for the use and benefit of his *four granddaughters.*

He goes on to provide that in the event of the death of "each of" his sons, the "stock held for the benefit of the one so

dying shall be held in trust for the benefit of my grandchildren designated in the next preceding paragraph, and shall become a part of the trust set out in the next preceding paragraph for said grandchildren . . . " With respect to the disposition of the stock in his wife's trust, if not appointed by her, testator provides that it is to be "disposed of in accordance with paragraphs 2 and 3 of Item V of this Will . . . " It appears obvious that testator intended that the whole of that part of his testamentary estate which formed the corpus of various trusts should eventually be channelled into the trust established for his grandchildren. As already pointed out, it is completely clear that the testator did not wish these trusts to be equal in value—neither with respect to total corpus for each trust nor the corpus set aside for each grandson as compared with that set aside for each granddaughter.

To us that intent is further evidenced by his provision in the event of the death of a grandchild without lineal descendants. He specifically and without equivocation provided that in that event, the *"share"* of the one dying should "go to the surviving grandchildren for their lives *in the same proportions as set out in paragraph 2 of Item V."* We think the testator clearly intended that the share of Eleanor Barnes in the trust must now be divided in the same proportions as the corpus was divided between the two trusts for the grandchildren in paragraph 2 of Item V—i.e., 54.28% to the trust for granddaughters and 45.72% to the trust for the grandsons. There is no technical language used which must be considered.

[2] We reach a different result with respect to the accumulated income. The testator used the word "jointly" in directing income distribution to the granddaughters. That the word was not intended to apply to eventual corpus distribution is evidenced by specific provisions for that in section 6 of the same Item. However, nowhere else in the will does there appear the word jointly. Actually, in other portions of the will where the testator refers to income distribution, he uses the words "share and share alike" and "per capita." Of primary importance in determining testator's intent with respect to income distribution within the trusts set up is his language in the second paragraph of paragraph 2 of Item V, the portion of the will by which he established the trusts. After he had directed the trustee "to apply the net income from ten and 65/100 (10.65%) percent of said stock after any sale under Item III hereof, in trust for the use and

Trust Co. v. Barnes

benefit of my four granddaughters jointly," he said: "The said income is to be paid to the persons named in the proportions set out, or for their benefit, in equal *shares* as frequently as earnings or dividends on said stock shall be available for such purposes, this to continue so long as each beneficiary named in this paragraph shall live . . . " Again, in paragraph 3 of Item V in providing that upon the death of each son, the stock held by the trustee for the one dying should become a part of the "trust for the benefit of my grandchildren designated in the next preceding paragraph" and referring to income distribution the testator said: "the distribution to my said grandchildren to be on *a per capita basis* as set forth in the proportions set forth in the next preceding paragraph" (referring to paragraph 2, Item V). Here, it seems to us that testator has clearly demonstrated a contrary intent—that is, he did not intend to use the word "jointly" in its technical sense. *Kale v. Forrest, supra.* We think testator demonstrated an intent that the income from the trust for the granddaughters, like the one for the grandsons, be distributed to the beneficiaries equally. It follows, therefore, that under paragraph 6 of Item V, the testator would intend that accumulated but undistributed income would, at the death of a beneficiary—grandchild, be distributed in equal shares to the surviving grandchildren.

The cause is, therefore, remanded for the entry of a judgment in accordance with this opinion.

Modified and remanded for judgment.

Judges MARTIN and ARNOLD concur.