The widow of the testator lived until the youngest child who survived him attained full age. But one of his daughters, Susannah Tomlinson, died before that time, leaving issue. The object of the bill was to obtain the opinion of the Court whether the share of Mrs. Tomlinson survived to her personal representative.
The inclination of the courts is to construe legacies, and especially provisions for children, to be vested and transmissible if the words will possibly admit of it; and they are most reluctantly held to be contingent. Hence the general rule is that if a legacy be given to two or more, or the survivors or survivor, equally to be divided between them, the period to which the words are referred is the death of the testator. If the gift be immediate, that is to say, without any previous interest in the subject to another person, there is nothing to denote any other period but that at which the will first speaks. At that time the legacy vests, and the division is made or ought to be made, and the persons then answering to the description must take their shares absolutely, or there would be survivorships indefinitely until all comes to the last survivor, which is inadmissible without the *Page 43 
most unequivocal words. But if a previous life estate be given, (43) the period of division is the death of the tenant for life; and the survivors at that time take the whole, either as not having vested before or if vested at the death of the testator, as being divested by the death of one of the legatees, and surviving to the others. Upon this last point, however, the cases are not all reconcilable. It is not surprising that they should not be. The question does not turn on words having a technical and precise legal meaning, like heirs or the like; but the Court is to determine upon the apparent intention, to be collected both from the particular disposition and the other parts of the will, and the context varies with almost every will. Hence there are numerous cases in which the survivorship is sometimes referred to the death of the testator, notwithstanding a previous interest to another, and sometimes to the period of distribution. It is not proposed to enumerate or to classify those cases, because it is thought upon the whole of them the principle is indisputably established that if, upon the whole will, the certainty of the shares in their amount, or rather the proportion of the estate to which each legatee should be entitled, could not be conclusively determined upon the death of the testator, then the will must be construed as referring the survivorship to the event on which the legacy is to vest in possession.
By this will the estate is to be divided upon the death of the wife, or the arrival at age of the youngest living child, which shall soonest happen. In the former case the estate is to go to all the "living children" except Mrs. Donaldson. In the latter, it is to be divided between the wife and "all my children, as is mentioned," that is, all the living children, except Mrs. Donaldson.
If this had been an absolute disposition to the wife for life, and then to be equally divided between surviving children, the question would be open to discussion upon the conflicting cases alluded to. It may be, also, that there is no difference between the words "to my children or the survivors of them" and the expression here used, "to my living children," if standing by themselves, though the latter seems more emphatically to say then living. But there are other circumstances here affixing a future meaning to the word, which (44) seem to be uncontrollable.
The testator applies the term "living" four times to his children, in some of which he most certainly refers to events succeeding his death; and it is not easy to see how it can be said he used the word in a different sense in the other instances, although it might be doubtful what his meaning was in these latter dispositions, if they stood by themselves. The will begins with a bequest to the wife of the whole estate, "until my youngest living child comes of age, provided my wife lives"; and *Page 44 
afterwards says, "if my wife do live until my youngest living child comes of age, she shall have an equal share of my estate with my living children." What child is the "youngest living child," upon whose arrival at age the wife's estate in the whole was to cease and a share vest in her? It cannot be the one who happened to be the youngest at the making of the will or the death of the testator, for then the provision would be for a division at a certain period at all events, namely, when that child came of age; or in case of its death, when it would have come of age. But that is clearly not the intention, for the gift of the whole to the wife is obviously to keep the estate together for the support of the family and the education of the younger children, as long as there was a living infant child and no longer. The whole is given to the mother, because there is a child living who is not of full age. Whenever that should not be the case, he meant that the property should not be kept together but be divided. The sense of "my youngest living child," as here used, is the same as if the words had been transposed and the expression was "my youngest child living," that is, then living or alive. The period of division is contingent, depending, first, upon the life of the wife, and next, upon the living of the children until all come of age, or the dying of the younger ones, until none were left but those of full age. If "living" has that meaning in the clauses quoted, how can it receive a different one when used as descriptive of the persons to take? If "youngest living child" denotes the event on which the estate is to vest in possession to be when
there is no infant child alive, it would seem that the "living (45) children" amongst whom the division is to be made must be those then alive.
But this is the stronger from the express contingency on which the wife's share depends and the particular words in which it is expressed. They are, "if she dies before my youngest living child comes of age, then all my property shall be divided between my living children"; "but if she lives until my youngest living child comes of age, she shall have an equal share with my children, as is mentioned"; before this it was altogether uncertain what share each child should have until either the wife's death or the arrival at full age of all the children, or of the last one that was living. If the wife died before the latter events, she took nothing, by force of the word die applied to her; but if she lives until the youngestliving child attains full age, then she and all the living children take equally. "Living," in reference to the children, as strictly ties up the disposition to those living at the period of division as "if she live" does, when applied to the wife. Doubtless there would have been a difference in the mind of the testator between a provision for the issue of his children and the future issue of his *Page 45 
wife, if the case had occurred to him. But it did not, and he has forgotten to provide for the death of a child leaving issue, and has put the wife and children upon the same footing, and nearly in the same words, by giving an equal share to each, if living at the period of distribution, and nothing if not so living. Any other reading would strike the word "living" out of the will altogether. As Mrs. Tomlinson died before her mother and before the full age of all the children, she was not entitled under the will.
PER CURIAM. Decree accordingly.
Cited: Sanderlin v. Deford, 47 N.C. 78.
(46)