18400

Edward W. MILLER, Rogers Miller and Mary Miller, Appellants, v. Charles W. ROGERS, Elizabeth R. Airth, Neva R. Radford, Winston J. Rogers, Lena R. Hall, J. D. Garden, Olive Gandy Rogers, William W. Rogers, Ralph F. Rogers, Louise V. Rogers and Elizabeth R. Ingram, Respondents.

(144 S. E. (2d) 485)

*Messrs. Tison & Tison,* of Bennettsville, and *Robinson, McFadden & Moore,* of Columbia, *for Appellants,*

*Messrs. Sam Rogol* and *Paulling & James,* of Darlington, *for Respondents,*

*Messrs. Tison & Tison,* of Bennettsville, and *Robinson,*

September 17, 1965.

Bussey, Justice.

This action sought construction of the last will and testament of Winston J. Rogers, as well as certain incidental relief. The appeal is from an order of the circuit court, confirming the construction given to said will by the special referee. No question of incidental relief is here involved.

The testator, a resident of Darlington County, was apparently possessed of a substantial estate, though the total value of such estate does not appear in the record. He died testate on October 5, 1932, his will being dated September 30, 1929. Testator was twice married, having by his first wife six children and by his second wife none. In 1929, when his will was executed, five of his children were still living; one, Neva Rogers Garden, had died on November 12, 1912, leaving surviving her an only child, J. D. Garden. On the date of the will, testator's second wife, Mary D. Rogers, was fifty years of age. Testator's age does not appear in the record, but other facts therein would clearly indicate that testator was considerably older than his second wife. In his will he made substantial, though not equal, provision for each of his children, as well as his grandson, J. D. Garden, and his wife Mary D. Rogers. All of testator's children living at the time of the execution of the will were still living at the time of his death, but between that date and the death of his widow, Mary D. Rogers, in January 1962, three more of his children died, one of them childless and unmarried.

The instant controversy arises out of item II of the will which reads as follows:

"I give, devise and bequeath unto my beloved wife, Mary D. Rogers, my plantation on which I now reside, containing 245 acres, more or less, for and during the term of her natural life and at her death, I direct that said plantation be sold by my Executors, or the survivor of them, hereinafter named and the proceeds of said sale to be divided between my living children and the children of any deceased child, share and share alike."

It is contended by the respondents, and was held by the lower court, that under the foregoing language the children of the testator living at the date of his death and his grandson, J. D. Garden, took a vested interest in remainder in the proceeds of the sale of the tract of land in question. Under that construction either a per capita or per stirpes distribution of the proceeds would reach the same result.

The appellants contend that this construction is incorrect; that the children of the testator living at his death took only a contingent remainder, as opposed to a vested remainder, and that it was the intention of the testator that the proceeds be divided, on a per capita basis, between his children who were still living upon the death of the life tenant and the children of any deceased child or children of the testator.

The conclusion of the special referee was predicated, primarily though not solely, on the rule that the law favors the vesting of estates at the earliest time possible, not inconsistent with the intent of the testator. This rule was stated and discussed, correctly we think, in *Faber v. Police,* 10 S. C. 376, 386, as follows:

"Questions of this kind are involved in no little difficulty and uncertainty, owing mainly, as we think, to the efforts which the Courts have made to construe limitations so as to constitute vested instead of contingent remainders, the rule being, as stated by Kent (4 Com. 203), that 'the law favors vested estates and no remainder will be construed

to be contingent which may, *consistently with the intention,* be deemed vested.' This rule, by its very terms, admits, as it should do, the paramount importance of the intention of the testator which must necessarily override every other rule and be the governing principle, otherwise the Court instead of the testator would make the will." (Emphasis added.)

It is fundamental and well established in this state that, while there are certain rules of construction to be followed in seeking the intent of a testator, they are all subservient to the paramount consideration of determining what was meant or intended by the terms used in the will, the cardinal rule of construction being to ascertain and effectuate the intention of the testator, unless that intention contravenes some well settled rule of law or public policy.

It seems to us the controlling question here is what the testator meant by the terms "my living children" as used in item II of his will. The testator used the word "living" to qualify the word "children", and the conclusion of the referee apparently did not fully take into consideration the intent or meaning of the quoted words, as used by the testator.

While there are cases from other jurisdictions construing the words here under consideration, which have arrived at varying results, dependent upon the facts and the entire contents of the particular wills involved, no case from this jurisdiction has been cited or come to our attention wherein this court has been called upon to construe these particular words when used in the context which they were here used by the testator. The nearest case in point is that of *Roundtree v. Roundtree,* 26 S. C. 450, 2 S. E. 474, wherein the testator directed that the remainder be equally divided, share and share alike, between his "surviving children". We quote the following from the opinion in that case:

"It seems to us that the controlling question is as to what the testator meant by the terms 'my surviving children,'

as used in the first clause of the will. To determine this question we must ascertain what period must be looked to with a view to discover who would then be the surviving children of the testator. But three periods have been or can be suggested for this purpose: (1) The date of the will; (2) the death of the testator; (3) the death of the life-tenant, the widow. The first idea which naturally presents itself is, that if the testator, when he used the words in question, had reference to either the first or second periods above suggested, then the use of the word 'surviving' was wholly unnecessary; for it is quite clear that, if it was the intention of the testator that the remainder should be divided among his children who were living at the time of the execution of the will, or at the time of his death, (the period when a will is ordinarily supposed to speak,) the words 'my children' would mean precisely the same persons as the words 'my surviving children.'

\* \* \*

"It seems to us clear, therefore, that, if we should adopt either the first or second period suggested as the point to which the testator's mind was directed while penning the first clause of his will, we must necessarily regard the word 'surviving' as mere surplusage, adding nothing to the language used, and throwing no light whatever on the intention which the language was used to express. This, however, we are not at liberty to do, as the well-settled rule requires us to give force and effect to every word used; and it would be very extraordinary to reject so important and oftentimes controlling a word as that of 'surviving' as surplusage. The testator did use the word, and manifestly used it as qualifying the word 'children,' and we must give it that effect. By its use he plainly intended that the residue of his estate, after the termination of the widow's life estate, should be divided, not among his children, for he did not say so, but among his *surviving* children, for that is what he has said. He, therefore, clearly did not mean to include *all* of his children, but only his *surviving* children. He could not pos-

sibly know which of his children would be then living, and therefore he used the most appropriate word to designate those whom he could not otherwise describe. His mind was directed to the division of that portion of his estate which, according to his scheme, could not possibly take place until some future, indefinite period; and, while his mind was so directed to that period, he used the terms in question, 'my surviving children'; and the inference seems irresistible that he meant by those terms those of his children who might be then surviving. * * *

"Indeed, it is conceded to be the general rule in this state that, where a testator gives property to one for life, with remainder to be equally divided among his surviving children, the death of the life-tenant, and not that of the testator, is the period which must be looked to in order to determine who are to take. *Evans v. Godbold,* 6 Rich. Eq. 26; *Schoppert v. Gillam,* Ibid. 83."

While the modifying word here is "living" rather than "surviving", we think that the two terms are equivalent, at least in the context here used, and applying the rationale of the *Roundtree* decision to the language of the instant case, it would appear that the testator intended that his children who were to share in the proceeds of the remainder would be only those children who were living at the death of the life tenant, and hence, his children, at the time of his death, did not take a vested remainder interest.

Here, as in the *Roundtree case,* the language used could appertain to only one of three dates: the date of the will, the death of the testator, or the death of the life tenant. The first date is clearly excluded here because the testator included in the division "the children of any deceased child", and on the date of the will he had only a single grandson by a predeceased child. If the testator intended the second period, the date of his death, the word "living" would have been surplusage, just as the word "surviving" would have under the same circumstance in the *Roundtree case.* If he

intended his children living at the date of his death to take a vested interest immediately, he did not need to use the modifying word "living" and would have accomplished that result by the use of the word "children", without any modifying adjective. Here, as in *Roundtree*, the testator's mind was directed to the division of that portion of his estate which, according to his scheme, could not possibly take place until some future, indefinite time, and while his mind was so directed to that period, he used the term "my living children."

The disposition thus apparently intended and made by the testator is, we think, not at all unreasonable or unnatural in view of the facts of the instant case and the scheme of testator's will as a whole. As pointed out above, he was substantially older than his wife and he was making substantial provision for each of his children living at the time of the will, as well as his grandson by a predeceased daughter. When the testator considered disposing of the remainder interest in the real estate here involved, it should be borne in mind that the greater portion of his estate was being otherwise finally disposed of by the terms of his will. In view of the normal life expectancy of his wife, her life tenancy in the tract of land would not likely terminate for quite a number of years. Testator could not know which, if any, of his children might still be living at that probably distant date, and, under these circumstances, we think it not at all unnatural that he should conclude that the proceeds of the ultimate, but probably distant, sale of the tract of land should be divided, share and share alike, between those of his children who might, perchance, then still be living, and the children of any deceased child or children.

For the foregoing reasons, we think that the conclusion of the referee, to the effect that the children of the testator, living at the time of his death, took a vested interest in remainder, is erroneous and not in accord with the intent of the testator. We conclude that under a proper construction of the will the proceeds of the sale of the tract of land

should be equally divided on a *per capita* basis between such of the children of the testator as were living upon the death of the life tenant and the children of the deceased children of testator.

The judgment of the lower court is, accordingly, reversed and the cause remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.