NONA MAYO HOOKS AND HUSBAND, CURTIS W. HOOKS; ETHEL MAYO SHIREY AND HUSBAND, LYNWOOD SHIREY; LEONARD MAYO AND WIFE, JULIA R. MAYO; ORA MAE FOWLER (WIDOW); FRED B. MAYO AND WIFE, LOUISE D. MAYO; JANET MAYO PEARSALL (WIDOW); AND MARJORIE MAYO CARROLL AND HUSBAND, WOODROW W. CARROLL, SR. v. DAVID WHITLEY MAYO (SINGLE); GEORGE E. MAYO, III AND WIFE, REBECCA COLE MAYO; AND GRETCHEN MAYO JORDAN AND HUSBAND, BEN JORDAN

No. 888SC1326

(Filed 18 July 1989)

**Wills § 35.4— devise of farm—life tenant—vesting of remainder interest**

The trial judge erred in an action for a declaratory judgment to construe a will by ruling that the will devised a vested remainder to nieces and nephews who were living at the time of his death and should have granted summary judgment for plaintiffs where the testator left all of his property to his wife, except the farm he inherited from his father, which he gave to his wife for her lifetime and ". . . at her death, said farm shall be divided between my living nieces and nephews"; the testator died in 1940 survived by his wife, one brother, and eleven nieces and nephews; the wife died in 1987, survived by seven nieces and nephews; the seven surviving nieces and nephews are the plaintiffs in this action; and the defendants are four heirs of the dead nieces and nephews. The Court of Appeals concludes from the will's language that the testator used "living" to express his intent to take care of any nieces and nephews living at the time of the eventual distribution of the estate, the death of his wife, and in so doing treats the phrase "my living nieces and nephews" as our courts have treated other phrases of survivorship, giving the nieces and nephews the estate contingent upon their survival of the life tenant.

Judge LEWIS dissenting.

APPEAL by plaintiff from *Herbert O. Phillips, Judge.* Judgment entered 7 November 1988 in Superior Court, WAYNE County (out of session and out of district, by consent of the parties, at Kinston, North Carolina). Heard in the Court of Appeals 7 June 1989.

**HOOKS v. MAYO**

[94 N.C. App. 657 (1989)]

*Dees, Smith, Powell, Jarrett, Dees & Jones, by Tommy W. Jarrett, for plaintiff-appellants.*

*Warren, Kerr, Walston & Hollowell, by John H. Kerr, III, for defendant-appellees.*

BECTON, Judge.

Plaintiffs sought a declaratory judgment to construe the Last Will and Testament of Jake G. Mayo. The trial judge ruled that Mr. Mayo's will devised a vested remainder in his farm to such of his nieces and nephews who were living at the time of his death. Plaintiffs appeal, contending that the testator intended that only the nieces and nephews who survived the life tenant should have an interest in the farm. We reverse and remand with instructions that the trial judge enter summary judgment for plaintiffs.

I

Jake G. Mayo died testate on 31 May 1940. He was survived by his wife, Sophia Jarman Mayo, one brother, George E. Mayo, and eleven nieces and nephews, all of whom were born prior to the time the testator executed his will on 20 December 1939. Jake G. Mayo left all of his property to his wife, ". . . except the farm I inherited from my father. This farm, I give to my wife . . . for her life time and at her death, said farm shall be divided between my living n[ie]ces and nephews."

Sophia Jarman Mayo died on 28 January 1987. Between the time of her death and the death of the testator, Jake's brother and four of Jake's nieces and nephews died. The seven surviving nieces and nephews are the plaintiffs. Four heirs of the dead nieces and nephews are the defendants.

II

Plaintiffs contend that the testator intended only those nieces and nephews who survived the life tenant should have an interest in the farm and that the nieces and nephews living at the time of the testator's death took only a contingent remainder interest. The defendants contend, as the lower court held, that because the language of the will is ambiguous, all the nieces and nephews living at the testator's death took a vested interest in the farm.

It is true that the law favors early vesting of estates and that an estate will be held to vest at the death of the testator,

HOOKS v. MAYO

[94 N.C. App. 657 (1989)]

unless it is clear from the language that the testator intended to postpone vesting to some other time. *Chas. W. Priddy & Co. v. Sanderford*, 221 N.C. 422, 425, 20 S.E. 2d 341, 343 (1942). A court's primary objective when construing a will is to effectuate the intent of the testator, as long as that intent does not conflict with the state's public policy or laws. *Kale v. Forrest*, 278 N.C. 1, 5, 178 S.E. 2d 622, 625 (1971). All other rules of construction must yield to this objective. *Id.* at 14, 178 S.E. 2d at 625.

The testator's intention must be gathered, if possible, from the language of the will itself. *Clark v. Conner*, 253 N.C. 515, 520, 117 S.E. 2d 465, 468 (1960). Every word must be examined for meaning and purpose. *Id.* at 521, 117 S.E. 2d at 468. In this case, we are called upon to give meaning and purpose to the phrase "my living nieces and nephews."

States differ on the interpretation of words of survivorship. Some states hold that terms such as "surviving" refer to the death of the testator. *See, e.g., Gay v. Graham*, 218 Ga. 745, 130 S.E. 2d 591 (1963). North Carolina, however, is among the majority of states which presume that words of survivorship refer to the death of the holder of the intervening estate, unless an intention to the contrary is indicated. *Vass v. Freeman*, 56 N.C. 221 (1857). The reasoning behind this presumption is that it is assumed that the testator expected to be survived by those mentioned in the will and that it would be unnecessary to use words such as "surviving" or "living" if the testator intended that all those living at the time of his death should take. *See id.* at 226; *Miller v. Rogers*, 246 S.C. 438, 444, 144 S.E. 2d 485, 488 (1965).

North Carolina courts have held "surviving" to refer to the death of the holder of the intervening estate, as long as the entire will would sustain such a construction. For example, in *Kale v. Forrest*, 278 N.C. 1, 178 S.E. 2d 622 (1971), our Supreme Court held that the phrase "[a]t his death the balance should be given to my surviving heirs" referred to the "persons who would be living or surviving at the death of [the holder of the life estate]." *Id.* at 17, 178 S.E. 2d at 632.

Defendants rely heavily on *Taylor v. Taylor*, 174 N.C. 537, 94 S.E. 7 (1917), in which our Supreme Court held that the phrase "my living children" referred to all the children living at the death of the testator. However, the Court noted that

when the devise is to survivors after a life estate, the time usually adopted for determining who comes within the class is the death of the life tenant, and not the death of the testator . . . but these are not principles of substantive law, but rules of interpretation, which should be resorted to to ascertain the intention of the testator, and not to defeat it.

*Id.* at 539, 94 S.E. at 8 (citation omitted). The Court found evidence of the testator's intent for vesting to occur at his death because 1) he had used "living" to exclude his deceased child and that child's heirs for personal reasons, and 2) by other language in the will, the testator had said what he meant by "living." *Id.*

North Carolina courts have held "living," when qualifying the takers after a life estate, to refer to those living at the death of the life tenant. In *Poindexter v. Wachovia Bank & Trust Co.*, 258 N.C. 371, 128 S.E. 2d 867 (1963), the Court held the expression "that is living" in the executory devise meant those living at the death of the life tenant. *Id.* at 376, 128 S.E. 2d at 872. In *Gill v. Weaver*, 21 N.C. 41 (1834), the Court recognized the survivorship quality of "youngest living child," despite its disinheriting effect, noting that the testator had "forgotten to provide for the death of a child leaving issue . . . [and] [a]ny other reading would strike the word 'living' out of the will altogether." *Id.* at 45.

Language nearly identical to that found in Jake Mayo's will has been interpreted by the South Carolina Supreme Court in *Slice v. Metze*, 294 S.C. 12, 362 S.E. 2d 178 (1987). The court held the devise to the testator's wife for her life and at her death "to my living children to be equal [sic] divided between them" to vest the remainder at the death of the life tenant. *Slice* was based on an earlier case, *Miller*, in which the court found the words "my living children" to mean the same thing as "my surviving children," words which had been previously held to reflect an intent on the part of the testator to postpone vesting until the death of the life tenant. The court based its decision on the view that the word "living" must be given effect, for "[i]f [the testator] intended his children living at the date of his death to take a vested interest immediately, he did not need to use the modifying word 'living' and would have accomplished that result by the use of the word 'children,' without any modifying adjective." *Miller*, 246 S.C. at 444, 144 S.E. 2d at 488. We agree with the reasoning in *Miller*.

**HOOKS v. MAYO**

[94 N.C. App. 657 (1989)]

Other language in Jake Mayo's will reinforces the construction we have given to the remainder interest. We recognize that words such as "after," "at," or "upon," by themselves, do not postpone vesting. *See Sanderford*, 221 N.C. at 425, 20 S.E. 2d at 343. However, the phrase "at her death" combined with the phrase "living nieces and nephews" reflects to us a clear intention on the part of the testator to postpone vesting. As the Supreme Court of Pennsylvania stated in construing "at his death to be divided among his living children as follows: $500 to M., . . .":

> The words, "at his death," refer to the death of [the life tenant], and not to the death of the testator, and fix the time for division. The words "living children" and "other children" are descriptive of the persons who are then to take. Until the time for distribution is reached, the persons entitled to shares cannot be ascertained.

*Day v. Thompson*, 233 Pa. 550, 82 A. 935 (1912).

We must assume that Jake Mayo had a purpose in using "living" to qualify "nieces and nephews." None of the nieces and nephews had predeceased him, so he did not use the word to exclude a specific niece or nephew. Yet, his words serve as a limitation of the class which is to take the remainder interest. Therefore, we conclude from the will's language that Jake Mayo used "living" to express his intent to take care of any nieces and nephews living at the time of the eventual distribution of the estate, the death of his wife. In so doing, we treat the phrase "my living nieces and nephews" as our courts have treated other phrases of survivorship, giving the nieces and nephews the estate contingent upon their survival of the life tenant.

### III

For the reasons we have stated above, the order granting summary judgment for the defendants is reversed, and the case is remanded with instructions that the trial judge enter summary judgment for the plaintiffs.

Reversed and remanded.

Judge PHILLIPS concurs.

Judge LEWIS dissents.

Judge LEWIS dissenting.

I dissent. The court's construction of the language of a will must be guided by the intent of the testator. *White v. Alexander*, 290 N.C. 75, 224 S.E. 2d 617 (1976). The testator's intent is to be gathered from the four corners of the will. *Vick v. Vick*, 297 N.C. 280, 254 S.E. 2d 576 (1979). The construction of particular words is to be guided by an examination of the instrument in its entirety. *Lambeth v. Fowler*, 33 N.C. App. 596, 235 S.E. 2d 914 (1977). In its entirety, the will states:

> I give to my wife, Sophia Jarman Mayo, all my Personal Property, Real Estate, Money, Bonds, Etc., except the farm I inherited from my father. This farm I give to my wife, Sophia Jarman Mayo, her life time and at her death, said farm shall be divided between my living neices (sic) and nephews.

The majority concludes that the word "living" signifies an express condition that nieces and nephews survive the life tenant before they take a vested remainder. They hold that the word "living" comes after the phrase "at her death" and thus suggests that the remaindermen must be living at the death of the life tenant for the remainder to vest in them. However, the meaning of particular words in a will is to be determined in accordance with the testator's overall intention. *Schaeffer v. Haseltine*, 228 N.C. 484, 46 S.E. 2d 463 (1947).

Looking at the four corners of the will I gather that the overall intent of the devise was to guarantee that the farm Jake G. Mayo inherited from his father remained in the possession of lineal descendants of his father. All eleven of the nieces and nephews were on the Mayo side, the children of the testator's brothers. The structure of the will suggests it was written to exclude the farm from all other property taken by Sophia Mayo in fee simple. This farm was a Mayo family place and Jake G. Mayo singled it out to belong to his brother's children, as he had none of his own.

The language of a will is to be construed in light of the circumstances of the testator's family and estate known to the testator at the time. *Wilson v. Church*, 284 N.C. 284, 200 S.E. 2d 769 (1973). Had Jake G. Mayo not written the will and excluded the Mayo farm from the balance of his estate, his father's land would have passed to his wife. Given that she, at age 40, had not borne children, it was possible that the farm would then pass to someone other

than his father's lineal descendants. Particular language of the will must therefore be read in light of Jake G. Mayo's intention to keep his father's farm in the Mayo family.

In applying this overall intent to the word "living," I see no reason why Jake G. Mayo would have wanted to disenfranchise those nieces and nephews who died during the life tenancy. There is a presumption against disinheritance among heirs of the same class. *Palmer v. Ketner*, 29 N.C. App. 187, 223 S.E. 2d 913 (1978). This presumption is overcome only by clear expression of intent. *Id.* I believe that Jake G. Mayo employed the word "living" because he sought to devise the farm to those nieces and nephews who would themselves perpetuate the paternal line. Where the word "living" can be so explained, there is no evidence outweighing the presumption against disinheritance.

Furthermore, the law favors early vesting of estates. *Priddy & Co. v. Sanderford*, 221 N.C. 422, 20 S.E. 2d 341 (1942). An estate will be held to vest at the death of the testator unless it is clear from the language of the will that the testator intends to postpone vesting. *Id.* Where the word "living" does not unambiguously indicate such postponement, the presumption for early vesting prevails. I believe the remainder in the farm vested in those nephews and nieces who survived the testator.

For these reasons, I would affirm the order of the trial judge.