BEATRICE H. HOLLOWELL v. JAMES RODNEY HOLLOWELL AND WIFE, KAY MUNROE HOLLOWELL; TERESA H. WILLIAMS AND HUSBAND, DAVID WILLIAMS; CATHY HOLLOWELL PEARCE AND HUSBAND, LESTER PEARCE; DEBRA JOAN HOLLOWELL (UNMARRIED), AND LOUISIANA-PACIFIC CORPORATION

No. 333PA92

(Filed 4 June 1993)

1. **Wills § 53 (NCI3d)— devise to life tenants—use of "equal portions" and "respective"—tenants in common**

Where testator's will devised all of his lands "in equal portions" to his two nephews "for and during the terms of their natural lives," provided that "upon their deaths I give and devise their respective shares thereof in fee simple to their respective issue, who survive them, per stirpes," and further provided that if either nephew "shall die without issue surviving him the share of such deceased shall go to the other of my said two nephews for life and then to his issue in fee

HOLLOWELL v. HOLLOWELL

[333 N.C. 706 (1993)]

simple, per stirpes," the testator intended for his nephews to be tenants in common rather than joint tenants. The phrase "equal portions" evidenced an intent to create a tenancy in common rather than a joint tenancy, and the word "respective" emphasized testator's intent that vesting of the future interest should occur at the death of each life tenant rather than upon the death of both tenants.

**Am Jur 2d, Wills §§ 1127, 1128, 1288.**

2. **Wills § 35.1 (NCI3d) — devise to life tenants — contingent remainders — time of vesting**

Where testator's will devised all of his lands "in equal portions" to two nephews "for and during the terms of their natural lives," provided that "upon their deaths I give and devise their respective shares thereof in fee simple to their respective issue, who survive them, per stirpes," and further provided that if either nephew "shall die without issue surviving him the share of such deceased shall go to the other of my said two nephews for life and then to his issue in fee simple, per stirpes," the testator intended the contingent remainders to the surviving issue to vest upon the death of each of the life tenants rather than only upon the death of both life tenants. Thus, when the first life tenant died leaving issue, the contingent remainder of each lineal descendant of that life tenant vested.

**Am Jur 2d, Wills §§ 1127, 1128; Estates §§ 219, 220, 245.**

3. **Wills § 35.2 (NCI3d) — doctrine of implied cross remainders — inapplicability**

The doctrine of implied cross remainders was inapplicable where the testator intended to devise his property so that as each life tenant died leaving issue the contingent remainder would vest in the surviving issue of that life tenant and did not intend to have a gift over of all the property at once.

**Am Jur 2d, Estates §§ 230, 231, 245.**

On defendants' petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 107 N.C. App. 166, 420 S.E.2d 827 (1992), which affirmed a judgment entered for plaintiff by Duke, J., at the 22 April 1991 Civil Session of

**HOLLOWELL v. HOLLOWELL**

[333 N.C. 706 (1993)]

Superior Court, Wayne County. Heard in the Supreme Court 15 March 1993.

*Jonathan S. Williams and J. Darby Wood, P.A., by J. Darby Wood, for plaintiff-appellee.*

*Dees, Smith, Powell, Jarrett, Dees & Jones, by Tommy W. Jarrett, for defendant-appellants.*

FRYE, Justice.

In this case we decide whether the Court of Appeals erred in affirming the trial court's entry of partial summary judgment for plaintiff in which the trial court concluded that plaintiff possesses a one-fourth undivided interest in fee simple in the ninety-five acres of land in question. The resolution of this issue turns upon the proper construction of the will of Ed Langston who died on 30 May 1948. The determinative question is whether the testator's grandnephew, Milford Edgar Hollowell, at the time of his death, owned an interest in the land in question. If not, Milford Edgar Hollowell's widow (plaintiff) has no interest in the land and partial summary judgment in her favor must be reversed. If, on the other hand, Milford Edgar Hollowell owned an interest in the land at the time of his death, then this interest passed to plaintiff under Milford Edgar Hollowell's will. We conclude that the trial court properly construed Ed Langston's will and that the testator's grandnephew, Milford Edgar Hollowell, owned an interest in the land at the time of his death which passed under Milford Edgar Hollowell's will to plaintiff. Accordingly, the Court of Appeals did not err in affirming partial summary judgment in plaintiff's favor.

On 20 February 1948, three months before his demise, Ed Langston executed a will which in pertinent part provides:

I give and devise all of my lands, wherever situated, in equal portions to my nephews Milford Hollowell and Clarence Hollowell, for and during the term of their natural lives, and upon their deaths I give and devise their respective shares thereof in fee simple to their respective issue, who survive them, per stirpes.

If either of my said two nephews shall die without issue surviving him the share of such deceased shall go to the other of my said two nephews for life and then to his issue in fee simple, per stirpes.

## HOLLOWELL v. HOLLOWELL

[333 N.C. 706 (1993)]

The central issue in interpreting the will is whether the testator intended the contingent remainders to the surviving issue to vest upon the death of each of the life tenants or only upon the death of both life tenants. The Court of Appeals held that it was the testator's intent to create two separate lines of descent, each operating independent of the other and the contingent remainders were to vest upon the death of each life tenant. We agree.

The testator, Ed Langston, had three brothers and one sister, Lula Langston Hollowell. Ed Langston was the last of the five to die, and at the time of his death he had never married and had no children. He was survived by at least two nephews, Milford Hollowell and Clarence Hollowell, children of his sister, Lula.[1]

To determine when the contingent remainders vested, there are two critical dates which must be considered—the date of Ed Langston's death and the date of the death of the first of the named life tenants to die. The first date is illustrated by Chart A and the second date is illustrated by Chart B.

Chart A illustrates the Langston family tree at the time Ed Langston executed his Last Will and Testament on 20 February 1948 and at the time of his demise on 30 May 1948. James Rodney Hollowell (James R. Hollowell), whose name is capitalized, is the only family member shown on the chart who is a party to this action.

---

1. Ed Langston's will bequeathed $1000 to a nephew, Roland Hollowell. The record does not indicate whether Roland survived the testator.

HOLLOWELL v. HOLLOWELL

[333 N.C. 706 (1993)]

## Chart A

Milford Hollowell died in 1972, survived by Milford Edgar Hollowell and James R. Hollowell. Both James R. Hollowell and Milford Edgar Hollowell were born before the testator executed his will. Milford Edgar Hollowell died testate in 1980 survived by plaintiff and three children from a previous marriage, Teresa H. Williams, Cathy H. Pearce and Debra Joan Hollowell. His will devised all of his estate to plaintiff.

Chart B illustrates the Langston family tree at the time of Milford Hollowell's (Ed Langston's nephew) demise in 1972. Family members whose names are capitalized are parties to this action.

## HOLLOWELL v. HOLLOWELL

[333 N.C. 706 (1993)]

### Chart B

On 26 July 1986 Clarence Hollowell died intestate, leaving no issue. Apparently believing that they held all the interests in question, the individual defendants partitioned the property and conveyed the parcels to one another by division deeds. Plaintiff received no conveyance in these transactions.

On 17 December 1987, the individual defendants conveyed an interest in all the standing timber and pulpwood on the property by timber deed to B & C Logging, Inc., which assigned its interest to Louisiana-Pacific Corporation.

Plaintiff commenced this action by filing a complaint seeking a declaratory judgment construing the Last Will and Testament of Ed Langston and determining the ownership interests of the parties in the land in question. Plaintiff also sought to determine other rights and damages arising out of the ownership of the land. On 2 April 1991, the parties stipulated that if it is ultimately deter-

**HOLLOWELL v. HOLLOWELL**

[333 N.C. 706 (1993)]

mined that plaintiff owns an interest in the property, defendant Louisiana-Pacific Corporation will be entitled to file pleadings as it shall deem necessary.

After cross motions for summary judgment had been filed, the trial court, on 24 April 1991, granted plaintiff partial summary judgment and denied defendants' summary judgment motion. As part of the judgment, the trial court set aside the division deeds previously executed among the individual defendants. The trial court ultimately concluded that the present title to the ninety-five acres of land is vested in fee simple in the following tenants in common with their respective shares being:

| | |
|---|---|
| James R. Hollowell | one-half undivided interest |
| Beatrice H. Hollowell | one-fourth undivided interest |
| Teresa H. Williams | one-twelfth undivided interest |
| Cathy H. Pearce | one-twelfth undivided interest |
| Debra Joan Hollowell | one-twelfth undivided interest |

The Court of Appeals affirmed the trial court. We granted defendants' petition for discretionary review and we now affirm the Court of Appeals.

I.

An elementary rule of will construction is "that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Clark v. Connor*, 253 N.C. 515, 520, 117 S.E.2d 465, 468 (1960). *Pittman v. Thomas*, 307 N.C. 485, 299 S.E.2d 207 (1983), stated the well established rule:

"The will must be construed, 'taking it by its four corners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant." *Patterson v. McCormick*, 181 N.C. 311, 313, 107 S.E. 12 (1921). In referring to the "circumstances attendant" we mean "the relationships between the testator and the beneficiaries named in the will, and the condition, nature and extent of [the testator's] property." *Trust Co. v. Wolfe*, 243 N.C. 469, 473, 91 S.E.2d 246, 250 (1956).

*Pittman*, 307 N.C. at 492-93, 299 S.E.2d at 211. Thus, our primary focus in interpreting Ed Langston's will is the testator's intent.

[1] As a preliminary matter, we must first determine whether the testator intended to create a tenancy in common or a joint tenancy between the two life tenants, his nephews Milford and Clarence. We conclude that the language shows an intent for Milford and Clarence Hollowell to be tenants in common. In Langston's will there are two separate ways that he evidenced his intent to have the two nephews hold the property as tenants in common. First, the will provides that the land is devised "in equal portions." The language "equal portions" shows an intent to create two separate but equal shares which is inconsistent with a joint tenancy which views the ownership to be single and unified. *See* Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests* at 54-55 (2d ed. 1984) [hereinafter Bergin & Haskell]. Our Court of Appeals has held that the language "share equally" shows an intent to create a tenancy in common rather than the presumptive tenancy by the entireties between a husband and wife. *Dearman v. Bruns*, 11 N.C. App. 564, 566, 181 S.E.2d 809, 811, *cert. denied*, 279 N.C. 394, 183 S.E.2d 241 (1971). Dating back to 1895, this Court has held that the phrase "share and share alike" creates a tenancy in common. *Midgett v. Midgett*, 117 N.C. 8, 10, 23 S.E. 37, 38 (1895). We are convinced that the phrase "equal portions," like "share equally" and "share and share alike," evidences an intent to create a tenancy in common rather than a joint tenancy.

The second basis for our holding that a tenancy in common was created is the language in the will "I give and devise their respective shares . . . ." Defendants contend that the word "respective" is used in the will to clarify the division of the remainder interests in the two life estates. Plaintiff submits, and we agree, that by specifically stating in the will that the division is to be *per stirpes* there would be no need for clarification of how Ed Langston wanted his property to be distributed. Therefore, "respective" must be given another meaning. We conclude that Ed Langston included the word "respective" to emphasize his intent that vesting of the future interest occurred at the death of each life tenant rather than upon the death of both tenants.

[2] Defendants contend that plaintiff does not have any ownership interest in the ninety-five acres. The basis for defendants' argument

is that the contingent remainder held by plaintiff's late husband, the testator's grandnephew Milford Edgar Hollowell, never vested. Therefore, according to defendants, Milford Edgar Hollowell never held a one-fourth interest in the property to leave to plaintiff, his second wife.

In order to answer the central issue in this case we must determine when the future interests created by Ed Langston's will vested. "The law favors the construction of a will which gives to the devisee a vested interest at the earliest possible moment that the testator's language will permit." *Elmore v. Austin*, 232 N.C. 13, 19, 59 S.E.2d 205, 210 (1950); *Priddy & Co. v. Sanderford*, 221 N.C. 422, 20 S.E.2d 341 (1942); *McDonald v. Howe*, 178 N.C. 257, 100 S.E. 427 (1919). Nonetheless, defendants contend that there was no vesting until both life tenants died. Under their argument, when Milford Hollowell died, the contingent remainder which his issue held did not vest. Defendants argue that it was not until Clarence Hollowell died that vesting occurred. Stated differently, defendants contend that when the first life tenant (Ed Langston's nephew Milford) died leaving issue, his issue held contingent remainders in fee that would vest only upon their surviving the death of the second life tenant (Ed Langston's nephew Clarence). Defendants cite the following cases in support of this contention. *Kale v. Forrest*, 278 N.C. 1, 178 S.E.2d 622 (1971); *Strickland v. Jackson*, 259 N.C. 81, 130 S.E.2d 22 (1963); *Biddle v. Hoyt*, 54 N.C. (1 Jones Eq.) 159 (1854); *Hooks v. Mayo*, 94 N.C. App. 657, 381 S.E.2d 197 (1989), *aff'd per curiam*, 326 N.C. 361, 388 S.E.2d 768 (1990); *Cowgill v. Faulconer*, 57 Ohio Misc. 6, 385 N.E.2d 327 (1978); *Waugh v. Poiron*, 315 Ill. App. 78, 42 N.E.2d 138 (1942).

However, each of these cases can be distinguished on factual grounds. In both *Kale v. Forrest*, 278 N.C. 1, 178 S.E.2d 622, and *Hooks v. Mayo*, 94 N.C. App. 657, 381 S.E.2d 197, there was only one life tenant. This Court in *Kale*, and the Court of Appeals in *Hooks*, held that the survivorship requirement in each will should be construed to refer to the death of the life tenant rather than the testator. In the present case, there are two intervening life estates and there is no ambiguity in the will as to whether the grandnephews had to survive the testator in order to take their respective shares. In both *Biddle v. Hoyt*, 54 N.C. (1 Jones Eq.) 159, and *Strickland v. Jackson*, 259 N.C. 81, 130 S.E.2d 22, the life tenants were husband and wife, while the life tenants here are brothers. In both *Biddle* and *Strickland*, the future interests

at issue were to the surviving children of the marriage, a contingency clearly distinguishable from the instant case.

In addition to the fact that *Waugh v. Poiron*, 315 Ill. App. 78, 42 N.E.2d 138 and *Cowgill v. Faulconer*, 57 Ohio Misc. 6, 385 N.E.2d 327, are not binding precedent for this Court, the facts and issues in each are also distinguishable from the present case. The will in *Waugh*, for example, did not contain the clarifying language present in the Langston will: "upon their deaths I give and devise their respective shares . . . ." In *Cowgill*, the issue before the court was whether those claiming an interest in the estate had to survive the death of the testator. As previously mentioned, survivorship of the testator is not an issue in the instant case.

The pertinent language in the Langston will which we must interpret in order to determine the time of vesting is "upon *their* deaths I give and devise *their* respective shares thereof in fee simple to *their* respective issue, who survive *them*, per stirpes." (Emphasis added.) Defendants argue that the word "them" requires the remaindermen to survive both of the life tenants before vesting occurs. We disagree. Reading the will as a whole, we conclude the word "them" must be interpreted with reference to the words "their respective issue." So interpreted, this word causes no impediment to allowing vesting to occur when the first life tenant dies.

In this case, Milford Edgar Hollowell and James R. Hollowell each had to survive their father in order for their contingent remainder to vest. A remainder interest is contingent when it is "*either* subject to a condition precedent (in addition to the natural expiration of prior estates), *or* owned by unascertainable persons, *or both*." Bergin & Haskell, at 73. In the present case, the future interest was contingent since there was a survivorship requirement. The triggering event for the contingent remainder to vest was Milford Edgar Hollowell and James R. Hollowell surviving both the testator and their father Milford Hollowell. When Milford Hollowell died, Milford Edgar Hollowell and James R. Hollowell's contingent remainders became vested remainders in fee simple since they survived both the testator and their father.

A case factually similar to the instant one is *Williams v. Johnson*, 228 N.C. 732, 47 S.E.2d 24 (1948). The Court in *Williams* interpreted a will which devised property to the testator's grandchildren "for and during the term of their natural lives . . . then to their . . .

issue surviving them . . . ." *Id.* at 733, 47 S.E.2d at 25. This Court held that the language "their" and "surviving them" did not require the remaindermen to survive all the life tenants but that vesting was contingent upon their survival of the life tenant through whom the remaindermen took their interest. *Id.* at 735, 47 S.E.2d at 26. Thus, when one life tenant died the contingent remainder of each lineal descendant of that life tenant vested.

Defendants distinguish *Williams* on the basis of additional language in the *Williams* will: "in the event any of said grandchildren shall die, without leaving *him* surviving issue or issues, then to his next of kin in fee simple forever." *Id.* at 733, 47 S.E.2d at 25 (emphasis added). Defendants contend that the word "him" narrows the will so that vesting would occur upon the death of a life tenant and that that is the rationale for the Court's holding. We disagree. After determining the intent of the testator, this Court concluded that the words "their" and "surviving them" referred to the death of each life tenant. *Id.* at 735, 47 S.E.2d at 26. We likewise now conclude that Ed Langston's intent was to devise the property in question as two life estates with contingent remainders vesting upon the death of each life tenant.

One of the basic rules of will construction is to "give effect to the general intent of the testator as that intent appears from a consideration of the entire instrument . . . [and] the intent of the testator must be ascertained from a consideration of the will as a whole and not merely from consideration of specific items or phrases of the will taken in isolation." *Adcock v. Perry*, 305 N.C. 625, 629, 290 S.E.2d 608, 611 (1982) (citation omitted); *Wilson v. Church*, 284 N.C. 284, 200 S.E.2d 769 (1973). Defendants' argument that Ed Langston's intent was for the contingent remainders to vest only after the deaths of both life tenants fails when one reads the will as a whole and gives effect to every word and phrase. We conclude that Ed Langston specifically wrote a paragraph into his will to further evidence his intent to have the remainder interests descend separately after each life tenant died. That paragraph is as follows:

If either of my said two nephews shall die without issue surviving him the share of such deceased shall go to the other of my said two nephews for life and then to his issue in fee simple, per stirpes.

If this Court were to adopt defendants' argument this paragraph in the testator's will would be irrelevant and immaterial. There would be no need for a provision to solve the problem of one nephew dying without issue since no vesting would occur in any event until both nephews died.

We conclude that Ed Langston intended to create a tenancy in common between the two life tenants. Since the two life tenants held the land as tenants in common, the second paragraph also served to prevent the remainder interest of the first life tenant who died without issue from going back into the estate for failure of the contingent remainder to vest.

[3] Anticipating that this Court might conclude that the original interest between the two life tenants was a tenancy in common, defendants advance an alternative argument of implied cross remainders to support their position that both the trial court and the Court of Appeals erred in interpreting Ed Langston's will. Cross remainders are occasionally implied where there is more than one life tenant and the will dictates that the remainder interest is to go over as a whole. *Trust Co. v. Miller*, 223 N.C. 1, 7, 25 S.E.2d 177, 180 (1943). Courts will imply a cross remainder to prevent the rents and income of the deceased life tenant's interest from passing by intestacy. When the cross remainder is implied then the surviving life tenant enjoys the rents and income from the deceased life tenant's share. Once all life tenants die then the cross remainder is terminated. *Id.* at 7, 25 S.E.2d at 181. In order for this Court to imply a cross remainder, the testator's intent would have to be that at the end of the life estates there would be a gift over of all the property at once. *Id.* at 7, 25 S.E.2d at 180-81. As stated earlier, we believe that the testator's intent was not to.have a gift over of all the property at once. Instead, the testator intended to devise his property so that as each life tenant died leaving issue the contingent remainder would vest in the surviving issue of that life tenant. We see nothing in the will to suggest that the testator wanted to delay the taking of the fee by any surviving issue until both of the life tenants died. On the contrary, the consistent use of the word "respective" shares and "respective" issue evidences an intent that the property is to be devised separately rather than devised all at once. Therefore, the doctrine of implied cross remainders is inapplicable since there is no question as to what should happen to Milford Hollowell's one-half interest upon his death.

HOLLOWELL v. HOLLOWELL

[333 N.C. 706 (1993)]

Defendants' last argument for preventing plaintiff from receiving her one-fourth share is based on the contention that it was the testator's intent that the property remain in the family. In determining the testator's dominant intent, we find nothing in the will as a whole to suggest an intent to require that the property remain in the family. First, the testator does not designate the property as the "family farm" but instead makes an encompassing devise of "all his lands, wherever situated" to two of his nephews, Milford and Clarence. Second, one of the testator's nephews, Roland Hollowell, received a cash bequest of $1,000. Except for a residuary clause, there was no provision for Roland Hollowell to be an alternative taker in case the real property did not pass to Milford and Clarence. Also, no trust was created to ensure that the land remained in the Langston-Hollowell family. The will includes no specific restrictions or limitations on the use or alienation of the property, nor is there a provision making the remainder interests subject to divestment if certain events occurred.

We conclude that the trial court and the Court of Appeals properly construed the will in accord with Ed Langston's intent for Milford and Clarence Hollowell to each have a one-half undivided life estate interest in the land to share as tenants in common. Upon Milford's death, the contingent remainder of one-half undivided interest in the property vested in his surviving issue in fee simple since he was survived by issue. Milford Edgar Hollowell, as one of Milford Hollowell's two surviving issue, received a one-fourth undivided interest in fee simple in the ninety-five acres. Milford Edgar Hollowell could, and did, devise this interest to plaintiff. James R. Hollowell, as the other of Milford Hollowell's surviving issue, also received a one-fourth undivided interest. After Clarence Hollowell's death, in accordance with the second paragraph of the will, the remaining one-half undivided interest vested in fee in James R. Hollowell and the issue of Milford Edgar Hollowell *per stirpes*. James R. Hollowell received another one-fourth undivided interest making his total interest one-half. The issue of Milford Edgar Hollowell each received a one-twelfth undivided interest in the ninety-five acre tract of land.

For the reasons stated herein, the decision of the Court of Appeals is AFFIRMED.